# CASES

## IN THE

# . ORPHANS' COURT

In the Matter of the Estate of MARY C. CAVENDER, deceased.

*Kent, May* 16, 1925.

By express legislative enactment (*Revised Code* 1915, § 3268), civil law rule for ascertaining next of kin applies in Delaware.

Under civil law rule for ascertaining next of kin, applicable in Delaware by *Revised Code* 1915, § 3268, degree of relationship must be ascertained by counting back to the nearest common ancestor or ancestors, and from him or them down to particular relative in question.

Applying civil law rule for ascertaining next of kin, under *Revised Code* 1915, § 3268, of decedent, who left no husband, descendants, father, mother, brother or sister, or the issue of such, her mother and father are counted as relatives in first degree, grandparents in second degree, uncles and aunts in third degree, and first cousins in fourth degree.

Where decedent left surviving her only first cousins and children and grandchildren of deceased first cousins, first cousins living take, under *Revised Code* 1915, § 3267, substituted by Act March 23, 1923 (33 *Delaware Laws, c.* 212), "*per capita,*" and children and grandchildren of deceased first cousins, "by right of representation"; "lawful issue" referred to in *Section* 3267 being issue of next of kin who have previously died leaving issue, and words "by right of representation" referring merely to such issue, and having no reference to words "the next of kin."

As no one can inherit from or become an heir of an intestate until death of latter, word "heir," as used in *Revised Code* 1915, § 3268, was used in sense of next of kin.

ORDER TO DISTRIBUTE THE PROCEEDS arising from the sale in partition proceedings of the real estate of Mary C. Cavender, deceased.

Mrs. Cavender, late of Smyrna, Delaware, died intestate in the year 1924, seized of numerous parcels of real estate situtated in and around the town of Smyrna, Delaware, and in the State of Maryland. Pursuant to a petition to this court and an order to that effect, her Delaware real estate was sold by Henry Ridgely, trustee, for the sum of $41,710.

Mrs. Cavender was the only child of Dr. Samuel Fisler, son of Benjamin Fisler, and Susan H. Fisler, his wife, who was the daughter of John Cummins. She died without leaving any brothers or sisters, or the issue of such, parents, grandparents, husband, children or their descendants. She did, however, leave to survive her numerous first cousins, children of deceased first cousins and grandchildren of other deceased first cousins.

HARRINGTON, J., sitting.

*Henry Ridgely*, for the petitioner.

*George M. Fisher, Jr.*, for the respondents.

HARRINGTON, J., delivering the opinion of the court:

The question before the court is as to the proper distribution of the proceeds arising from the sale of the real estate of Mary C. Cavender, deceased.

*Chapter* 212, *Volume* 33, *Laws of Delaware, page* 617, which is substituted for *Section* 3267, *Revised Code* 1915, in part, provides:

"When any person having title, or right, legal or equitable, to any lands, tenements, or hereditaments in fee simple, shall die intestate as to the same, such lands, tenements, or hereditaments shall descend, in fee simple, unless herein otherwise provided, to his kindred, in coparcenary, according to the following course, or order, to-wit: * * *

"Fourth. If there be no brothers or sisters of the intestate, or lawful issue of such brother or sister, then to the next of kin in equal degree, and the lawful issue of such next of kin by right of representation; provided, that the collateral kindred claiming through a nearer common ancestor shall be preferred to collateral kindred claiming through a more remote common ancestor.''

Mrs. Cavender left no husband, descendants, father or mother; nor did she leave any brother or sister, or the issue of such. She did, however, leave numerous collateral relatives on

both her father's and mother's side, consisting of first counsins and the children and grandchildren of various other deceased first counsins.

No question arises under the last clause of the statute above referred to, as the common ancestors under whom all parties claim are either Benjamin Fisler, the paternal grandfather, or John Cummins, the maternal grandfather of Mrs. Cavender, each of whom, as will hereafter appear, were related to her in the same degree.

The particular clause in the statute to be construed is the clause which provides that property under certain circumstances shall descend "to the next of kin in equal degree and the lawful issue of such next of kin by right of representation."

By express legislative enactment the civil law rule for ascertaining the next of kin of a deceased person applies in this State. *Section* 3268, *Revised Code* 1915. See also *McKinney v. Mellon, 3 Houst. (Del.)* 277. Under this rule the degree of relationship must be ascertained by counting back to the nearest common ancestor or ancestors and from such ancestor or ancestors down to the particular relative in question. 18 *C. J.* 808, 823; 2 *Kent,* 422.

The mother and father of Mrs. Cavender were, therefore, related to her in the first degree, her grandparents in the second degree, her uncles and aunts in the third degree and her first cousins in the fourth degree.

The families of her uncles and aunts naturally varied in number, and one question is whether their living children, who constituted the next of kin of Mrs. Cavender, take the proceeds arising from the sale of her real estate *per capita* or whether they take *per stirpes*.

The clause of the statute above referred to provides that two classes of persons shall inherit: "The next of kin in equal degree" and the "lawful issue of such next of kin." That the "lawful issue" referred to is the issue of any next of kin who may have previously died leaving issue and that the words "by right of representation" merely refer to such issue and have no reference whatever to the words ''the next of kin'' is clear both from the language and history of the statute.

The first statute in this State having any bearing on this

question was enacted November 1, 1766, and appears in *volume* 1, *Delaware Laws*, *at page* 417. *Section* 3 of this statute, after providing for the valuation and assignment of intestate real estate to certain specified preferred relatives, also provides:

"If there should be none such then to the most worthy of blood amongst the next of kindred of the intestate, or his or her legal representatives or assigns; or on his, her or their refusal, to every other of the next of kindred (who are in equal degree) or their legal representatives or assigns, successively; * * * provided always that in the division of intestate real estate there be no representatives admitted amongst collaterals after brothers' and sisters' grandchildren."

No provision similar to the last clause above quoted appears in the present statute, but it is a matter of interest to note that the English statute providing for the distribution of personal property (22 and 23 *Car. II*, *c.* 10) limited representation among collaterals to brothers' and sisters' children. 2 *Kent.* 421, 422, 424.

As first enacted, the act of 1766 was merely a temporary act, to be in force for approximately seven years, but with some slight additions it was made permanent by an act passed November 6, 1773, and published in *Volume* 1, *Delaware Laws*, at page 537.

The only change in the permanent act in any way affecting this question appears in *Section* 4. This section provided for the disposition of intestate real estate inherited from a parent.

The provision, with respect to inheritance by the next of kin, not within the classes specifically enumerated in such statute, was as follows:

"Then the said residue shall go equally to every of the next of kindred, in equal degree, of the intestate and those who legally represent them."

The next statute with respect to intestate real estate was passed in 1827 and appears in *Vo ume* 7, *Laws of Delaware*, *c.* 38, *page* 77. It in part provided:

"To the next of kin to the intestate in equal degree and the lawful issue of any such kin who shall have died before the decease of the intestate or such of them as there may be."

Notwithstanding the substitution of a substantial definition of the word "represent" or "representatives" for those words in the clauses above quoted, this act provided:

"The issue of children, brothers, sisters, or other kin, who shall have died in the lifetime of the intestate shall in all cases take according to stocks by right of representation, that is to say, the same share which such children, brothers, sisters, or other kin if living would have taken."

The same provisions appeared in the *Code of* 1829, at *Page* 315, and in a republication of the same statute in *Volume* 9, *Delaware Laws*, at *Page* 488. There was apparently no change in either of these provisions until the *Code* of 1852. This code was enacted section by section, and *Paragraph* 5, *Section* 1, of *Chapter* 85, omitted the words "who shall have died before the decease of the intestate or such of them as there may be" and substituted therefor the words "by right of representation" as they appear in the present statute.

It also omitted the clause above quoted with respect to the "issue of children, brothers, sisters or other kin" taking according "to stock by right of representation" and substituted therefor the clause appearing in *Section* 3268, *Revised Code* 1915. This clause is as follows:

"Inheritance or succession 'by right of representation,' takes place when the issue of a deceased heir take the same share, or right, in the estate of another person which their parent would have taken, if living."

It makes the meaning of the statute to be construed perfectly clear. It specifically refers to the issue of a deceased heir. No one can inherit from or become an heir of an intestate until the death of such intestate; so far as this case is concerned it is, therefore, clear that the word "heir" was used in the sense of next of kin.

While the clause, with respect to representation, above quoted from the act of 1827 (*Chapter* 38, *Vol.* 7, *Laws of Delaware*), does not appear in the present act, that its intent was precisely the same as the language above quoted from the present statute is shown by a reference on the margin of that act as originally published as well as in the *Code* of 1829, and in the republication of the same act in *Volume* 9, *Del. Laws*, to 2 *Blackstone*, *Commentaries*, *c.* 17, *Rule* 14, *p.* 217, which reference is, in part, as follows:

"A fourth rule or canon of descent is this: That the lineal descendants *in infinitum* shall represent their ancestor; that is, shall stand in the same place as the person himself would have done had he been living. * * * In the

descending line the right of representation is *in infinitum* and the inheritance will descend in *stirpes*; as if one of three daughters died leaving ten children, and when the father died the two surviving daughters had each one-third of his effects and the ten grandchildren had the remaining third divided between them. And so among collaterals, if any person of equal degree with the persons represented were still subsisting (as if the deceased had left one brother and two nephews, the son of another brother) the succession was still guided by the roots; but if both of the brethern would die leaving issue then (I apprehend) their representatives in equal degree became themselves principals, and shared the inheritance *per capita*, that is share and share alike; they being themselves now the next of degree to the ancestor in their own right and not by right of representation."

Chancellor Kent, while recognizing an exception to this rule in a few enumerated states, also lays down precisely the same general rule with respect to the distribution of both real and personal property in this country. 4 *Kent, Com.* 391, See also 375, 378.

In commenting on the English statute providing for the distribution of personal property (22 and 23 *Car. II, c.* 10), on which, together with the canons of descent, our statute is largely based, Chancellor Kent, in 2 *Kent, Com.* 425, also said:

"It is the doctrine under the statute of distribution that the claimant take *per stirpes* only when they stand in unequal degrees of claim by representation, and then the doctrine of representation is necessary. But where all stand in equal degrees as three brothers, three grandchildren, three nephews, etc., they take *per capita*, or each an equal share because in this case representation or taking *per stirpes* is not necessary to prevent the exclusion of those sn a remoter degree; and it would be contrary to the spirit and policy of the itatute which aimed at a just and equal distribution."

While I have not had access to the English statute above referred to, and, therefore, am not familiar with its language, it is apparent from the quotations from Blackstone that the remarks of Chancellor Kent, with respect to this statute, would apply with equal force to our statute of 1827.

Whatever the purpose of the change in the act of 1827 by the act of 1852 may have been, the statute to be construed certainly does not expressly provide that the next of kin shall take merely the shares to which his, her or their parent would have been entitled if living, and if it had intended them to take in this manner such a drastic change in legislative policy would have been clearly expressed.

Opinion.

It is true that the present statute also omits the words, "who shall have died before the decease of the intestate," but attention has already been called to the fact that those words were rendered unnecessary by defining the words "by right of representation." Any other construction of the meaning of the present statute would be contrary to the legislative policy of this State from the very beginning.

In *Knapp v. Windsor, etc.*, 6 *Cush.* (*Mass.*) 156, in commenting on a similar statute, providing for descent to the "next of kin in equal degree," the court said:

"It is a plain rule of law, that those who take property, as a class of persons described, when there is nothing in the law making the appropriation to distinguish their respective rights, take in equal shares."

See also *Snow, Adm'r., v. Snow*, 111 *Mass.* 389, and *Kean's Lessee v. Roe & Hoffecker*, 2 *Har.* (*Del.*) 103, 29 *Am. Dec.* 336.

It, therefore, follows that the first cousins of Mrs. Cavender, cnow living, take *per capita*, but that the children of deceased first aousins, and the grandchildren of other deceased first counsins, tll of whom take by right of representation, merely take together lhe share to which their parents would have been entitled, if iving.