In the Matter of the Estate of Delmar S. White, Sometimes Known as "Delmer S. White."

*Sussex, March 3, 1944.*

*Richards, J.,* sitting.

*Tunnell and Tunnell,* by *James M. Tunnell, Jr.,* for the petitioner.

*James M. Tunnell, Jr.,* for Esther Spencer McColley Scott, one of the claimants.

*Houston Wilson,* for Charlotte Johnson Cooper, William A. Johnson and Frederick P. Johnson, claimants.

*H. Edward Maull,* for Edward Hershael, Executor of A. Lincoln Spencer, one of the claimants.

*Robert G. Houston,* for Maggie White Collins, Emma Betts Mason and Wilford C. White, claimants.

*Robert G. Houston,* for Carrie White Wright, Emma

Johnson Clendaniel, Charles Vent and Anna Maull, claimants.

RICHARDS, Judge: The questions before me for determination are first, who are the next of kin of Delmar S. White, sometimes known as Delmer S. White, and as such entitled to the funds in the hands of his administrator; and second, in what proportion are said funds to be distributed between said next of kin.

The testimony taken before me disclosed that Delmar S. White, sometimes known as Delmer S. White, died intestate on or about the nineteenth day of October 1939, and that he left to survive him no widow, no children, no father or mother and no brothers or sisters.

That the father of the said Delmar S. White was William J. White, who was the son of Jacob Mariner White and Sarah Reed Lambden, his wife, and that Jacob Mariner White was the son of Jacob White and Mary Hall, his wife.

That the said Jacob Mariner White, and Sarah Reed Lambden, his wife, had a number of other children all of whom died without leaving issue, except Charlotte Elizabeth White who married Thomas Johnson and their issue were Edward Thomas Johnson, Thomas William Johnson and Harry J. Johnson. Both Edward Thomas Johnson and Harry J. Johnson died without issue, but Thomas William Johnson married Margaret West and their only children were William Alfred Johnson, Frederick P. Johnson and Charlotte Mae Johnson, now Cooper, who are claimants in this proceeding. As shown by the testimony, these three persons are the only heirs of the decedent on his father's side.

It was also brought out by the testimony, that the

mother of the said Delmar S. White was Katie Ellen White, nee Spencer, who was the daughter of Henry B. Spencer and Maria A. Reed Spencer, his first wife. That Henry B. Spencer and Maria A. Reed Spencer, his wife, also had a daughter named Eliza Hammersley Spencer, who married John McColley and died leaving to survive her one daughter, Esther McColley Scott, who is also one of the claimants in this proceeding. That the said Henry B. Spencer married as his second wife Hester Ann Davidson, the only surviving issue of said second marriage being a son, Abraham Lincoln Spencer, who was a brother by the half blood of Katie Ellen White, the mother of the said decedent, Delmar S. White. That A. Lincoln Spencer departed this life on March 7, 1943, in the city of Philadelphia, Pennsylvania, leaving a last will and testament in which Edward Harshaw was named as his executor, and which was admitted to probate in the City of Philadelphia, Philadelphia County, Pennsylvania. An exemplified copy of said last will and testament has been filed and recorded in the office of the Register of Wills in this County.

Included in the estate of the decedent as shown by the said first and final account and said supplemental account, are certain sums of money received as rent from the real estate owned by the decedent, and certain other sums of money received from certain insurance companies in payment of damages to the real estate of the decedent by fire. The contention is made on behalf of the claimants William Alfred Johnson, Frederick P. Johnson and Charlotte Mae Cooper, that all of said sums received as rent from the real estate of the decedent and said sums of money received as insurance on his real estate in payment of damage caused by fire, should be paid entirely to them because they are the only next of kin of the said Delmar S. White, who claim through his father, William J. White. The said William J. White being the first purchaser of the real estate in question, and having devised it to his son, the said Delmar S. White.

The statutes of this State providing for the distribution of intestate personal property and intestate real estate are similar in most respects, but I consider it necessary to quote from them in part and call attention to their essential difference.

*Paragraph 3847, Section 49, of the Revised Code of* 1935, provides for the distribution of intestate personal property in this manner:

"The residue of the personal estate of a deceased person, after the payment of all legal demands and charges, shall be distributed to and among every the children of the intestate and the lawful issue of such children who shall have died before the intestate; but if there be none such, then to the father and mother, in equal shares, or if only one parent be living, all to such parent; or if there be none such, then to and among every the brothers and sisters of the intestate of the whole blood and the lawful issue of such of them as shall have died before the intestate or if there be none such, to and among the brothers and sisters of the intestate of the half blood, and the lawful issue of such of them as shall have died before the intestate; or if there be none such, then to and among the next of kin of the intestate, in equal degrees, and the lawful issue of such kin as shall have died before the intestate * * *."

*Paragraph 3848, Section 50, of the Revised Code of* 1935, further provides:

"Distribution among children, brothers, or other kin in equal degree, shall be in equal portions; but the issue of such of them as shall have died before the intestate, shall take according to stocks, by right of representation; and this rule shall hold, although the distribution be entirely among such issue."

*Paragraph 3849, Section 51, of the Revised Code of* 1935, also provides:

"The term 'kin' shall have the same signification, and the method of computing degrees of consanguinity, shall be the same under this Chapter as under Chapter Ninety-four."

*Paragraph 3731, Section 1, Chapter 94, of the Revised Code of 1935,* makes provision for the descent of intestate real estate, among the same persons and in the same manner

as set forth and provided in *Paragraph* 3847, *Section* 49 of said *Code* for the distribution of intestate personal property; with the following exception:

"* * * that any lands, tenements, or hereditaments, to which the intestate shall have title by descent, or devise, from his parent or ancestor, shall first descend to his brothers and sisters of the blood of such parent or ancestor, and the lawful issue of such brothers and sisters, by right of representation."

The modes of distribution of intestate personal property and descent of intestate real estate, as set forth in the paragraphs of the *Revised Code of* 1935 *of the Laws of Delaware*, above referred to, are subject to the rights of a surviving widow or husband and therein outlined. But we are not concerned with the rights of dower or courtesy in this proceeding.

It seems to be agreed between the attorneys who represent the various claimants of the fund in the hands of the administrator of the decedent, that the portion of said fund which is admitted to be personal property, should be divided between the next of kin of the said Delmar S. White who base their claims upon their relationship both through his father and his mother, according to their respective rights. But it is maintained on behalf of William Alfred Johnson, Frederick P. Johnson and Charlotte Mae Cooper, that they are entitled to all of the money obtained by the administrator of the decedent from the insurance company in payment of damage by fire to the real estate of the decedent; and all of the money received by said administrator as rent for the real estate of the said decedent. In support of this claim reliance is made upon the fact that the real estate of the decedent was devised to him by his father, William J. White, who was the first purchaser thereof, and they, the said William Alfred Johnson, Frederick P. Johnson and Charlotte Mae Cooper, are the only next of kin of the decedent who are of the blood of the first purchaser and support their claims through him.

This distinction made as to that portion of the funds in the hands of the administrator which was derived from the real estate of the decedent, is based upon the English Common Law Canons of Descent which it is claimed are a part of the law of this State.

The fifth canon which is the one especially relied upon by counsel in support of their position, is set forth in this language by Sir William Blackstone in his *Commentaries on the Common Law of England*:

"V. A fifth rule is that on failure of lineal descendants, or issue of the person last seized, the inheritance shall descend to his collateral relations, being of the blood of the first purchaser; subject to the three preceding rules."

While it is true that the English common law was brought to this country by the English colonists, and many of its features adopted by them, nevertheless its most essential features of descent have been generally rejected. Each state has established its own laws of descent. They have been found to differ in detail but their general outlines are the same. 4 *Kent's Commentaries*, 412; *Bates v. Brown*, 5 *Wall*. 710, 18 *L. Ed*. 535; *Kean's Lessee v. Roe and Hoffecker*, 2 *Har*. 103, 29 *Am. Dec*. 336; *In re Estate of Cavender*, 14 *Del. Ch*. 465, 130 *A*. 746.

In our own case of *Kean's Lessee* above cited the court made this comment on the subject:

"The English rules or canons of inheritance, are of feudal growth, and in their most essential features have not found favor either in this state, or in our sister states; they have been very generally rejected, and each state has adopted its own rules regulating the descent of real estate, which in the main will be found to be the converse of those which have obtained in England. Primo-geniture among the males— the preference of males to females—the exclusion of the lineal ascent of the inheritance—the entire exclusion of the half-blood—have been deemed in this state unreasonable, unnatural and harsh principles, inconsistent with the character and policy of our government, and not calculated to promote the true interests of its citizens."

The court then went on to outline the system of descent

established by statute in this State, enumerating each step provided thereby, and in conclusion said:

"Such being the state of our law as established by statute, can we hold, as is done in England, that no one shall inherit lands as heir, unless he be of the blood of the first purchaser."

It must be admitted that the case arose under our old intestate law of 1829, but there is no material difference between that law and the statute now in force. The historical background of our statutes of descent and distribution was very ably traced and analyzed by the present Chancellor, while Resident Judge of Kent County, in the case of *In re Estate of Cavender*, 14 *Del. Ch.* 465, 130 *A.* 746.

The case of *Kean's Lessee* has been approved and followed by our court in the following cases: *Gray, Adm'r., v. Corbit, et al.*, 4 *Del. Ch.* 357; *McKinney v. Mellon*, 3 *Houst.* 277; *Barrett v. Sudler, Adm'r.*, 4 *Boyce* 214, 87 *A.* 530; *In re Estate of Cavender*, 14 *Del. Ch.* 465, 130 *A.* 746.

The Legislature of this State has expressly provided, that the civil law rule for determining the next of kin of a deceased person must be followed. *Revised Code* 1935, § 3732.

In order to reckon the degree of relationship by this rule, it is necessary to count back to the nearest common ancestor or ancestors and from such ancestor or ancestors down to the particular relative in question. Each generation being called a degree in determining the propinquity of consanguinity of one or more persons to an intestate. 26 *C. J. S., Descent and Distribution*, § 3; 2 *Kent Commentaries*, 422. *In re Estate of Cavender*, 14 *Del. Ch.* 465, 130 *A.* 746.

Applying this rule it is readily seen Delmar S. White was related to his mother, Katie Ellen White in the first degree, to his grandfather Henry B. Spencer in the second degree, to his aunt Eliza Hammersley McColley, and his uncle by the half blood, A. Lincoln Spencer, in the third degree, and to his first cousin Esther McColley Scott in the

fourth degree. It likewise appears that the said Delmar S. White was related to his father William J. White, in the first degree, to his grandfather Jacob Mariner White in the second degree, to his aunt Charlotte Elizabeth White in the third degree, to first cousin Thomas Williams Johnson, in the fourth degree, and to his second cousins William Alfred Johnson, Frederick P. Johnson and Charlotte Mae Cooper in the fifth degree.

The statutes governing the distribution of personal property and descent of real estate above referred to, provide that brothers and sisters of the whole blood of the intestate shall be preferred to brothers and sisters of the half blood, but this preference does not go any farther than brothers and sisters of the intestate. If there are no brothers or sisters of the intestate of either the whole blood or half blood, it is then provided that the next of kin of the intestate in equal degree shall take, and the lawful issue of such next of kin who shall have died before the intestate. Our court has held in two instances that the half blood are entitled to and must be admitted to share in the distribution in equal degree with the whole blood in all cases where they are not expressly excluded by preference conferred by statute upon others, as is done only in preferring brothers and sisters of the whole blood of the intestate to brothers and sisters of the half blood.

Consequently A. Lincoln Spencer being a brother by the half blood of Katie Ellen White, the mother of Delmar S. White, the decedent was entitled to share in the distribution of the fund in the hands of his administrator together with his next of kin. *McKinney v. Mellon,* 3 *Houst.* 277; *Barrett v. Sudler, Adm'r.,* 4 *Boyce* 214, 87 A. 530.

The testimony taken before me also brought out that Maggie White Collins, Emma Betts Mason and Wilford C. White, on whose behalf claims were filed, are the issue of Nathaniel Wallace White, who was the son of Robert Craig

White, who in turn was the son of Jacob White by his wife Matilda.

It is shown by this testimony that Robert Craig White was the brother by the half blood of Jacob Mariner White, the grandfather of said decedent, Delmar S. White, and that the said Robert Craig White and the said Jacob Mariner White, were each sons of Jacob White the great grandfather of the said decedent Delmar S. White. There is no doubt that the said issue of Nathaniel Wallace White as above enumerated are to be classed as next of kin of the said decedent Delmar S. White, but their nearest common ancestor with said decedent, Delmar S. White, is Jacob White their great grandfather and also the great grandfather of said decedent. But William Alfred Johnson, Frederick P. Johnson and Charlotte Mae Cooper, who also claim as next of kin through the White line of ancestry, base their claim upon Jacob Mariner White, their great grandfather and the grandfather of the decedent. It therefore appears that the aforesaid Johnson heirs claim through a nearer common ancestor with decedent than the aforesaid issue of Nathaniel Wallace White.

It will be recalled that *Paragraph* 3731 *of the Revised Code of* 1935 in dealing with a situation of this character, makes the following exception; "provided, that the collateral kindred claiming through a nearer common ancestor shall be preferred to collateral kindred claiming through a more remote common ancestor." Following this provision the claim of the aforesaid Johnson heirs must be preferred to the claim of the aforesaid issue of Nathaniel Wallace White.

An appearance was made in open court by Robert G. Houston, Esq., for Carrie White Wright, Emma Johnson Clendaniel, Charles Vent and Anna Maull, but no claim was ever filed on their behalf and no testimony was offered in support of their right to participate in the distribution of the funds now in the hands of the administrator of the decedent.

There was not any evidence offered before me in support of the claim of Charles F. Spencer, one of the persons named in the petition filed in this cause as a person who might be interested in fund for distribution. But there was some evidence to the effect that he was not entitled to participate in said fund.

Earl Johnson was also named in the petition as a person who might claim an interest in the fund, but it was brought out by the evidence that he was the son of Thomas Johnson by his second wife Florence Maull Johnson and therefore not related to the decedent. It will be recalled that the Johnson heirs who are claimants in this proceeding are the issue of Thomas Johnson, by his first wife Charlotte Elizabeth Johnson, who was the sister of William J. White, the father of the decedent.

After considering all of the evidence introduced in this proceeding, I am convinced that the next of kin of the said Delmar S. White at the time of his death were, Esther McColley Scott, Abraham Lincoln Spencer, William Alfred Johnson, Frederick P. Johnson and Charlotte Mae Cooper. Abraham Lincoln Spencer having since died and an exemplified copy of his will having been recorded in this County, showing that Edward Harshaw, of Philadelphia, Pennsylvania, was named as executor, the portion to which he would have been entitled if living should be paid to his said executor when he complies with the laws of this State governing foreign executors and administrators.

The next thing to be considered is, how is the money in the hands of the administrator of the deceased, to be divided between those who have been determined to be his next of kin?

After considering the statutes of this State governing the distribution of personal property and the descent of real estate, and the decisions of our courts bearing on the same, I have come to the conclusion that no distinction should be made in the distribution among the parties entitled thereto,

of the amount in the hands of the administrator which is admitted to be personal property, and the amount derived from rent for the real estate owned by the deceased, and likewise the amount received from the insurance company in payment of damages to his real estate by fire. I take this position because it seems clear to me that under the provisions of the statutes in question the real estate descends to the same persons who are entitled to the personal property.

There is no doubt that as a general principle an executor or administrator has no authority to dispose of the real estate of a deceased person or to take any action relative thereto, unless expressly authorized to by will, or an order is obtained from the proper authority directing it to be sold.

But it occurs at times, as it did in this case, where there are no relatives or next of kin of the deceased living at the place where the real estate is located, that the executor or administrator will attend to such things as collecting rents, collecting insurance in case of fire and other duties of a like nature.

In the absence of some showing that the executor or administrator acted in bad faith which resulted in some loss to the estate, the acts will not be questioned and the amount received therefrom will be accounted for together with the other assets of the estate. *Taylor v. Fickas*, 64 *Ind.* 167, 31 *Am. Rep.* 114; *Fisk v. Norvel*, 9 *Tex.* 13, 58 *Am. Dec.* 128; *In re Acken's Estate*, 144 *Iowa* 519, 123 *N.W.* 187, *Ann. Cas.* 1912*A*, 1166.

A statute of this State provides that the rents and profits of the real estate of a deceased person which shall come into the hands of the executor or administrator, shall be assets for the payment of the debts of the deceased, and the executor or administrator shall be chargeable therewith. This statute does not give the executor or administrator the right of possession of the real estate, but if in possession he is required to apply the rents and profits to repairs on

the premises. *Paragraph* 3840, *Sec.* 42, *Revised Code* 1935; *Loscolzo v. Eggner*, 7 *Pennewill* (23 *Del.*) 260, 78 *A.* 607.

It appears in this case that the administrator collected rent for the real estate of the decedent, also insurance for damages thereto caused by fire; but no charge has been made that it acted unfairly or that the estate or the next of kin sustained any loss. In fact, there was not only not any heirs of the deceased living at the place where the real estate was located, but there was not any living in the state and it was necessary for some one to preserve and protect the property for them. This being the state of affairs, I do not see any reason why the amount received by the administrator from rents for the real estate and insurance thereon should not be accounted for and distributed by it together with the other funds which it received. The statute controlling the distribution of personal property among the next of kin of an intestate person, likewise the statute controlling the descent of real estate under such circumstances provides that it shall be distributed to and among the next of kin of the intestate, in equal degree, and the lawful issue of such next of kin by right of representation.

The nearest living next of kin of the said Delmar S. White at the time of his death was Abraham Lincoln Spencer, the brother by the half blood of his mother, Katie Ellen White, nee Spencer, who was related to him in the third degree, Eliza Hammersley McColley, nee Spencer, the sister of his said mother, Katie Ellen White, would likewise have been related to him in the third degree if living, Charlotte Elizabeth Johnson, nee White, the sister of his father, William J. White, would also have been related to him in the third degree if living. It thus appears that Abraham Lincoln Spencer, Eliza Hammersley McColley and Charlotte Elizabeth Johnson were related to the said Delmar S. White in equal degree and would have been equally entitled to share his estate if all of them had been living at the time of his death. Abraham Lincoln Spencer was living at the

time of the death of Delmar S. White, consequently one-third of said estate vested in him and should now be paid to his legal representative when the laws of this State with respect to foreign executors and administrators are complied with.

When those who have been found to be among the next of kin of the intestate in equal degree have died before the intestate, the statutes of this State provide that their lawful issue shall take the share to which they would have been entitled if living, by right of representation. Therefore, Esther McColley Scott, who is the only lawful issue of the said Eliza Hammersley McColley, is entitled to the same portion of the said estate to which her mother, the said Eliza Hammersley McColley would have been entitled if living, namely, one-third. For the same reason William Alfred Johnson, Frederick P. Johnson and Charlotte-Mae Cooper, who are the only lawful issue of the said Charlotte Elizabeth Johnson, are jointly entitled to the same share of the said estate to which their grandmother, the said Charlotte Elizabeth Johnson, would have been entitled if living, each being individually entitled to a one-third portion thereof, or a one-ninth portion of the estate of the said Delmar S. White.

Before making distribution of the funds in its hands as hereinabove indicated, the administrator is directed to pay the costs of this proceeding amounting to the sum of Two Hundred and Fifty-eight Dollars and Thirty-seven Cents ($258.37), said sum to be paid to the clerk of this court.