FRANK A. GRADWOHL,

*vs.*

SEBASTIANA CAMPAGNA.

*New Castle, May 1, 1946.*

*Thomas Muncy Keith,* for complainant.

*William Poole,* of the office of Southerland, Berl & Potter, for defendant.

SEITZ, Vice-Chancellor: This is a bill for specific performance of a contract made by the complainant as vendor to sell his alleged undivided 3/33 interest in certain real estate known as No. 2219 Market Street, Wilmington, Delaware. In support of the complainant's prayer for specific performance of the agreement he alleges in his bill that he owns a 3/33 interest in the property by descent from one Wilhelmina E. Jacobs, and that he contracted to sell such interest to the defendant, who has refused to perform his part of the contract.

The defendant's answer admits all the allegations in the bill, except the allegation that complainant owns a 3/33 undivided interest by descent in the property. By way of further answer, defendant avers that complainant lacks a 3/33 interest in the property and further avers facts tending to show that complainant calculated his interest on the assumption that the issue of certain uncles and aunts of Wilhelmina—who were half brothers and half sisters of her father—were not entitled to a share of the property. Wilhelmina E. Jacobs, an only child whose parents predeceased her, died intestate, a widow without issue. Complainant is a first cousin of the whole blood on the maternal side. There are several first cousins both of the whole and the half blood on the paternal side.

While the parties admit that there is some uncertainty as to just what interest the complainant has in the property if the collaterals of the half blood are entitled to share, they have agreed that such uncertainty in nowise affects the determination of the issue before me. The case is, therefore, being decided on the assumption that complainant will be unable to convey the 3/33 interest which he contracted to sell, if collaterals of the half blood share with those of the whole blood of the same degree.

Defendant contends that under the fourth paragraph of the descent statute next of kin of the same degree share equally, whether they be of the whole blood or of the half blood, and that consequently, complainant owns less than the 3/33 interest which he contracted to sell the defendant. Complainant, of course, takes a contrary position with respect to the right of the collaterals of the half blood to share in the real estate.

Complainant filed a motion for a decree notwithstanding the answer under *Rule 44*, and thereby admitted, for purposes of the decision on the motion, the truth of the factual allegation of the answer to the effect that there exist next of kin of the half blood of the same degree as the whole blood. Both solicitors agree that I am called upon to decide only one question, namely, whether "next of kin" as used in our descent statute (*Paragraph 3731 of the Revised Code of Delaware 1935*) and in particular the fourth paragraph thereof, includes next of kin of the half blood as well as those of the whole blood of the same degree.

*Paragraph 3731 of the Revised Code of Delaware, 1935* in so far as apposite provides, as follows:

"3731. Sec. 1. Rules of Descent; Children, Father and Mother; Brothers and Sisters; Next of Kin; Curtesy; Dower:—When any person having title, or right, legal or equitable, to any lands, tenements, or hereditaments, in fee simple, shall die intestate as to the same, such lands, tenements, or hereditaments shall descend, in fee simple, unless herein otherwise provided, to his kindred, in coparcenary, according to the following course, or order, to wit: * * *

"Fourth: If there be no brothers or sisters of the intestate, or lawful issue of such brother or sister, then to the next of kin in equal degree, and the lawful issue of such next of kin, by right of representation; provided that the collateral kindred claiming through a nearer common ancestor shall be preferred to collateral kindred claiming through a more remote common ancestor; * * *."

It is further conceded that our statute governing the distribution of intestate personal property (*Paragraph 3847 of the Revised Code of Delaware 1935*) which, for present

purposes, may be considered identical to our Descent Statute, has been interpreted by our courts to admit next of kin of the half blood to share equally with those of the whole blood where all are next of kin of the same degree. See *In re White's Estate*, (1944) 27 *Del. Ch.* 438, 37 *A.* 2d 167; *McKinley v. Mellon*, (1866) 3 *Houst.* 277.

It is generally accepted that by the so-called English common law rule collateral kindred of the intestate could not inherit real property if they were kindred of the half blood only. See 18 *C.J., Descent and Distribution*, § 32; 26 *C.J.S., Descent and Distribution*, § 25.

As early as 1836 the highest court of this state in *Kean's Lessee v. Roe & Hoffecker*, 2 *Har.* 103, 29 *Am.Dec.* 336, clearly recognized the nature of the English common law rule and just as clearly indicated that the rule had not been adopted in the various states of the union. It would seem that the basis for rejecting the English common law rule as set forth in the following excerpt from *Kean's Lessee v. Roe & Hoffecker, supra,* is almost determinative of this case:

"The English rules or canons of inheritance, are of feudal growth, and in their most essential features have not found favor either in this state, or in our sister states: they have been very generally rejected, and each state has adopted its own rules regulating the descent of real estate, which in the main will be found to be the converse of those which have obtained in England. Primo-geniture among the males—the preference of males to females—the exclusion of the lineal ascent of the inheritance—the entire exclusion of the half-blood—have been deemed in this state unreasonable, unnatural and harsh principles, inconsistent with the character and policy of our government, and not calculated to promote the true interests of its citizens."

It should be noted that our court did not attempt to differentiate between the so-called English common law rule governing the descent of intestate real estate and that governing the distribution of intestate personalty. In substance, complainant contends that in Delaware the English common law rule as to the descent of real property still prevails, except to the extent that it is specifically modified by

our statute. While complainant concedes, as he must, that, under our statute with respect to personal property, those of the half blood share with those of the whole blood of the same degree with the specific exception noted in the statute itself, nevertheless, he states that this is consistent with the English common law rule as to the distribution of personalty. While the so-called English common law rule as to the distribution of intestate personalty among the whole and the half blood of the same degree is not free from doubt, it does appear that the half blood share with the whole blood of the same degree. See 16 *Am.Jur., Descent and Distribution*, § 62, *Footnote* 7. Complainant reasons that Delaware in its statute, in substance, enacted the English common law rule with respect to the distribution of intestate personalty, and that the decisions of our courts dealing with the rights of collaterals of the whole and the half blood are consistent with such rule. But, says complainant, the English common law rule as to the descent of realty, contrary to the rule as to personalty, precluded the half blood from taking under the descent statute. Thus, having enacted the English common law rule as to personalty, it should be assumed that we did likewise as to realty.

It is obvious that the true interpretation of our descent statute, in so far as the right of the next of kin of the half blood to share with the whole blood of the same degree is concerned, must be arrived at by determining whether we adopted the English common law rule.

Considering the language of the court in *Kean's Lessee v. Roe & Hoffecker, supra,* it is apparent that our court there rejected the very philosophy underlying the preference given to the whole blood under the English common law rule. This rejection applied of necessity to the English rule governing the descent of real estate because, as we have seen, the half blood apparently were recognized at common law under the English statute of distribution so that such language could have no application thereto. I am in full

accord with the language of our courts, especially that used by the now Chief Justice of this state in the case of *In re White's Estate, supra,* which indicates complete disapproval of the English common law rule eliminating collaterals of the half blood from the operation of the statutes governing intestate property.

My attention has not been called to and I have been unable to find any authority on the point in question prior to the passage of an act governing the descent of realty in the territory which is now Delaware (1 *Laws of Delaware, Chapter* 119a, *at pages* 288, 289). Nowhere in this act is any distinction drawn between the whole and the half blood. In 1766, the act above mentioned was amended, but once again no attempt was made to differentiate between the whole and the half blood (1 *Laws of Delaware, Chapter* 186a, *at page* 417). In 1773, an act was passed (1 *Laws of Delaware, Chapter* 22a, *at page* 537) which continued the previous acts in effect, and for the first time carved out a limited preference for the whole blood over the half blood in the case of brothers and sisters of the intestate, which is substantially the same exception as that which exists in the present statute. No attempt, however, was made to distinguish between the whole and the half blood in so far as next of kin were concerned.

It seems amply apparent that, in accordance with the uniform American view, the first acts passed here dealing with the descent of intestate realty were enacted on the assumption and with the intention that the half blood should share equally with the whole blood of the same degree. Otherwise, the subsequent change in the statute giving a preference to the whole blood in a limited situation would be rather meaningless.

A legislative intent that the half blood should come within the provisions of the descent statute, except when specifically excluded, is evident from the present statute itself. Thus, *Paragraph* 3731 *of the Revised Code of Dela-*

*ware* 1935 in providing for the order of descent of intestate realty makes no distinction in any of the seven classes therein set forth between the whole blood and the half blood, except in paragraph third (not here involved) which provides:

"Third: If there be no father or mother, then in equal shares to his brothers and sisters, and the lawful issue of any deceased brother or sister, by right of representation; provided, any brothers or sisters of the whole blood and their issue shall be preferred to brothers and sisters of the half blood and their issue, and further, that any lands, tenements, or hereditaments, to which the intestate shall have title by descent, or devise, from his parent or ancestor, shall first descend to his brothers and sisters of the blood of such parent or ancestor, and the lawful issue of such brothers and sisters, by right of representation; * * *."

If we accept complainant's contention that the English common law rule was incorporated in our statute governing intestate realty, except to the extent that it was specifically abrogated, then we have the unnatural situation where the Legislature has *explicitly* incorporated the English common-law rule in one class—which class is not here directly involved—and *implicitly* incorporated the *same* rule in all the other classes set forth in the *same* statute. Certainly the need for additional emphasis is not a sufficient explanation for the use of explicit language in the third class preferring the whole blood over the half blood. The true explanation, it seems to me, is that the Legislature carved out a limited preference for the whole blood from a legislative background which treated the whole blood and the half blood without distinction.

The language used in the third paragraph of the statute in question takes on meaning and substance only when interpreted in the light of a legislative history which originally drew no distinction between the whole and the half blood. When interpreted in the light of such a background, it makes real sense as a preference granted to the whole blood by the Legislature in the case of the brothers and sisters of

the intestate. While some may quarrel with the policy behind such a preference, it is apparent that from an early date it was felt that in this limited situation the whole blood should have a preferred status.

It seems to me that, implicitly at least, the Superior Court of this state in *Barrett v. Sudler*, (1913) 4 *Boyce* 214, 87 *A*. 530, interpreted our descent statute, which in so far as here material has remained the same, to include within its operation the half blood as well as the whole blood of the same degree, except in the case of brothers and sisters of the intestate and their issue. But, whether or not it has been decided in the past, I now decide that under the present descent statute "next of kin" as used in the fourth paragraph of the statute includes collaterals of the half blood as well as of the whole blood of the same degree.

The parties agreed that if I should conclude that the collaterals of the half blood share equally with those of the whole blood in the situation here involved (whether by right of representation or *per capita* it is unnecessary to decide), then the complainant owns less than the 3/33 interest which he purported to sell. Having so concluded, and the answer having set up facts which, if true, would defeat the complainant's claim, I conclude that the complainant's motion for a decree notwithstanding the answer must be denied.

An order accordingly will be advised.