In the Matter of the ESTATE OF Edward S. SMITH, Deceased.

Court of Chancery of Delaware, New Castle County.

Submitted: Sept. 7, 1983.

Decided: Oct. 5, 1983.

Alan T. Boyd of Bayard, Brill & Handelman, Wilmington, for petitioners Bernhardt C. Smith, Beatrice S. Peters and Nancy S. Longacre.

John R. Weaver, Jr. of Keith & Koffenberger, Wilmington, for respondent Helen B. Boyce, Individually, and as the Executrix of the Estate of C. Harvey Boyce.

Thomas Herlihy, III of Herlihy, Herlihy & Harker, Wilmington, for respondent Katherine E. Beeson.

## DECISION UPON PETITION FOR DECREE OF DISTRIBUTION

BROWN, Chancellor.

This is a Register of Wills matter in which a petition for a decree of distribution has been filed pursuant to 12 *Del.C.* § 2331, et seq. The petition seeks a determination of the heirs of the decedent, Edward S. Smith, who are entitled to take his intestate estate. The ultimate purpose, of course, is to determine the identity of those persons to whom the estate of Edward S. Smith can be safely distributed by the administratrix of the estate under the Delaware laws of intestacy.

The matter was initially referred to a master appointed by the Court and a hearing was held in accordance with the requirements of the statutes. The master has

made his findings and has issued his report and recommendation as to the form of decree to be entered. Certain of the respondents have taken exception to the findings of the master and, accordingly, the matter has been reargued before the Court. As a result of the proceedings before the master the parties to the proceeding have stipulated to the existence of all relevant facts. Consequently, the question before the Court is strictly one of law.

The specific question to be decided involves an interpretation of the statutory definition of "kin" and "kindred" as it is now found at 1 *Del.C.* § 302(9). The factual background leading to this point may be summarized briefly as follows.

Edward S. Smith died intestate. He left surviving him no spouse, no issue, no parents and no brothers or sisters. His closest surviving collateral heirs at the time of his death were three first cousins on his father's side of his family and two first cousins once removed on his mother's side. He was also survived by two second cousins once removed on his mother's side but, as I understand it, and for reasons which will appear obvious hereafter, it is not being contended at this point that they are entitled to participate in the distribution of the estate.

The three first cousins on the side of the decedent's father are Bernhardt C. Smith, Beatrice S. Peters and Nancy S. Longacre. They are the petitioners in this matter. The two first cousins once removed on the side of the decedent's mother are C. Harvey Boyce and Katherine E. Beeson. They are referred to herein as the respondents. (Actually, C. Harvey Boyce has died since the commencement of this matter and thus his interests are now represented by his estate.) The respondents make their claim by right of representation through a deceased great uncle of the decedent.

Any matter such as this is difficult to explain and analyze without the benefit of a diagram showing the relationship of the claimants to the decedent. This is especially true in this case since both the petitioners and the respondents are claiming through the same degree of consanguinity to the decedent even though the petitioners are claiming through an ancestor closer to the decedent than the ancestor through whom the respondents make their claim. Since this disparity in the level of the ancestor through whom the claims are being made is at the heart of the controversy, a diagram of the opposing relationships is in order here.

Before proceeding to such a diagram, however, I think it appropriate to note that 1 *Del.C.* § 302(9), the statute here under consideration, provides among other things that for the purpose of determining kin or kindred "the degrees of consanguinity shall be computed by the civil law method." The civil law method, as explained by our case precedents, is to count up from the deceased to the nearest common ancestor of the deceased and the particular relative in question and then down to that relative, with each generation along the way representing one degree. *In re White's Estate,* Del.Orph., 37 A.2d 167 (1944); *In re Cavender's Estate,* Del.Orph., 130 A. 746 (1925). In addition, 12 *Del.C.* § 503(4) provides that where there is no surviving spouse, issue, parent or issue of a parent, the entire intestate estate of a decedent passes "to the next of kin of the decedent, and to the issue of a deceased next of kin, *per stirpes.*" Thus, a claimant at a more distant degree can take by right of representation through deceased kindred of a closer degree.

With these principles in mind the situation before the Court may be portrayed as follows:

MATERNAL SIDE

PATERNAL SIDE

③
Daniel Boyce
[Great Grandfather]

④
Harvey Boyce
[Great Uncle]

②
Spencer Boyce
[Grandfather]

②
Theophil Smith
[Grandfather]

⑤
C. Harvey
Boyce

⑤
Katherine
E. Beeson
[First Cousins
Once Removed]

①
Edith B. Smith
[Mother]

①
Leonard Smith
[Father]

③
Gerald Smith
[Uncle]

RESPONDENTS

Edward S. Smith
[DECEDENT]

④
Bernhardt
C. Smith

④
Beatrice
S. Peters
[First Cousins]

④
Nancy S.
Longacre

PETITIONERS

① = Degree of relationship to Decedent
* = Deceased at death of Decedent

From this diagram it can be seen that the petitioners, the three first cousins on the paternal side, stand in the fourth degree of kinship to the decedent as computed under the civil law method. At the same time the respondents, the two first cousins once removed on the maternal side, claim by right of representation through the decedent's great uncle, who also stood in the fourth degree of kinship to the decedent. The difference is that the common ancestor with the decedent through whom the respondents make their claim is a great grandparent while the common ancestor with the decedent through whom the petitioners make their claim was a grandparent, and thus a closer ancestor. This, finally, leads us to the question of law at hand.

The statute under consideration, 1 *Del.C.* § 302(9), reads as follows:

"(9) 'Kin' and 'Kindred,' as applied to the descent of estates, signify kin or kindred by blood, and the degrees of consanguinity shall be computed by the civil law method; *but collateral kindred claiming through a nearer common ancestor shall be preferred to those claiming through a more remote common ancestor.*" (Emphasis added.)

It is the language of the statute above emphasized that gives rise to the dispute between the parties. What does that language mean?

It is the position of the petitioners that the language is clear on its face. They say that it means that where collateral kindred stand in the same degree to a decedent, those claiming through a nearer common ancestor with the decedent will take the entire intestate estate to the exclusion of those claiming through a more remote common ancestor. Thus they contend that although both they and the respondents are collateral kindred of the decedent who lay claim to his estate through the fourth degree of consanguinity, they are nonetheless entitled to receive distribution of the entire estate, one-third to each, because they are claiming through a grandparent while respondents are claiming through a great grandparent, a more remote common ancestor.

The respondents, however, take the position that the matter is not so simple. To begin with, they say that the statute is ambiguous on its face. They say that this is so because the aforesaid emphasized portion of the statute employs the word "common" in the phrases "nearer *common* ancestor" and "more remote *common* ancestor." They say that the use of the word "common" in this context is unique to Delaware since no other state interjects it into its laws of intestate succession. For this proposition they rely on the digest of statutes found at 5 Thompson, *Real Property* (1979 Ed.) § 2451.

To illustrate that the statute is ambiguous respondents point out that it is impossible for collateral heirs on the maternal side to have common ancestors with collateral heirs on the paternal side, and vice versa, since the only common blood relation shared by those in the maternal and paternal ascending lines is the decedent himself. Thus they argue that to attempt to read the statute literally as advocated by the petitioners makes no sense. In other words, if I understand them correctly, respondents are suggesting that if the statute had been drafted to state that a preference is given to collateral kindred claiming through a "nearer ancestor" as opposed to those claiming through a "more remote ancestor," then the position taken by the petitioners might be the correct one. But they argue that the legislative insertion of the word "common" so as to modify the word "ancestor" in each instance conveys a different legislative intent.

To find that intention respondents resort to the history of our law on intestate succession. As noted in *In re White's Estate, supra,* while the English Common Law was brought to this country by the English Colonists, and while many of its features were adopted by them, its most essential features of descent and distribution were rejected. Such was true in Delaware, particularly as to the preference given to males over females under the English laws of inheritance. As stated in *Kean's Lessee v. Roe & Hoffecker,* Del.Super., 2 Harr. 103, 113 (1836):

> "The English rules or canons of inheritance, are of feudal growth, and in their essential features have not found favor either in this state, or in our sister states: they have been very generally rejected, * * *. Primo-geniture among the males—the preference of males to females—the exclusion of the lineal ascent of the inheritance—the entire exclusion of the half-blood—have been deemed in this state unreasonable, unnatural and harsh principles, inconsistent with the character and policy of our government, and not calculated to promote the true interests of its citizens."

Thus the respondents argue that it has long been the policy of our law not to prefer male interests to those of the female line in matters of inheritance. Presumably, they argue that in case of doubt statutes concerning descent and distribution should be interpreted so as to carry out this policy.

In addition, respondents point to the decision in *Barrett v. Sudler,* Del.Super., 87 A. 530 (1913), as well as those in *In re White's*

*Estate, supra,* and *In re Cavender's Estate, supra,* as examples of cases in which collateral heirs claiming by or through the same degree on both the maternal side and the paternal side have been permitted to share equally in the intestate estate. This sharing in the estate by both sides of the family, they say, reflects the historic policy of our law.

Indeed, respondents rely heavily on the decision *In re White's Estate.* They say that the facts of that case clearly support the construction of 1 *Del.C.* § 302(9) that they are advocating. There the facts indicated collateral heirs claiming through the third degree on both the maternal side and the paternal side. Those claiming on the maternal side were claiming through the maternal grandfather of the decedent as the nearest common ancestor and those claiming on the paternal side were claiming through the paternal grandfather of the decedent as the nearest common ancestor. However, on the paternal side, and by virtue of the right of representation, there were other collateral heirs claiming through the right of the great-grandfather of the decedent who, under the civil law method, also stood in the third degree to the decedent.

Relying upon identical language found in the predecessor statute to 1 *Del.C.* § 302(9) the court held that those claiming in the third degree through the grandfather on the paternal side took to the exclusion of those claiming in the third degree through the great-grandfather on the paternal side. The reason was that the former were claiming through a nearer common ancestor with the decedent—the paternal grandfather—while the latter were claiming through a more remote common ancestor—the paternal great-grandfather. Thus, since those remaining on each side were claiming through a grandparent, the collateral heirs on the paternal side claiming *per stirpes* through an aunt of the deceased at the third degree took one-third of the estate between them, while an uncle of the deceased and a cousin claiming *per stirpes* through an aunt of the deceased on the maternal side (both of their claims also being in the third degree) each took another one-third.

■ From these precedents the respondents argue that it is the policy of our law, and thus the intent of § 302(9), to permit those standing in the same degree of consanguinity to a decedent on both the maternal and paternal side to share in the intestate estate as their interests may appear, and that the preference given to collateral heirs claiming through a nearer common ancestor with the decedent comes into play only when there are competing claims through kindred of the same degree on the same side. They say that such a construction is particularly warranted in this case since otherwise the position advocated by the petitioners would totally exclude the maternal—or female—ascending line from sharing in the decedent's estate in favor of the paternal—or male—ascending line despite the fact that the collateral heirs on each side are claiming through the same degree of kinship. Such a result, respondents argue, would be in direct conflict with the announced policy of our laws of inheritance.*

---

* Respondents supplement their approach from another interesting historical angle. They point to the reference in § 302(9) to "the civil law method." Since Delaware rejected the male preferences given by the English system of descent, respondents suggest that the statutory reference to "the civil law" can only refer to the early Roman Law as most readily found in The French Civil Code (also known as The Code Napoleon). At Book III, Chapter III, Section I, Paragraph 733 of The French Civil Code it is provided that every succession which falls to ancestors is divided into two equal parts, one for the relations of the paternal line and one for the relations of the maternal line. Further, at Section III, Paragraph 746 it is provided as follows:

"If the deceased has left neither posterity, nor brother, nor sister, nor descendents from them, the succession is divided into moieties between the ancestors of the paternal line and the ancestors of the maternal line.

"The ancestor who is found in the nearest degree receives the moiety allotted to his line, to the exclusion of all others."

I have given consideration to this position of the respondents. Superficially at least, there is something to be said for the logic of its presentation. From a purely legal viewpoint, however, I do not feel that it passes closer scrutiny. I reach this conclusion for two reasons.

■ To begin with, the entire foundation for the respondents' approach is based upon the assumption that the General Assembly necessarily intended some particular meaning or purpose when it chose to insert the word "common" in the statutory phrases "nearer common ancestor" and "more remote common ancestor." I cannot find this to be true under the circumstances. I say this because the statute in its earlier language requires the degrees of consanguinity to be computed by the civil law method, and under the civil law method it is necessary in all cases to ascertain the nearest "common" ancestor between the deceased and the collateral heir in order to compute the degree of kinship. Thus, even if the word "common" had been omitted from each of the two phrases, and if the statute had simply given a preference to collateral kindred claiming through a "nearer ancestor" over those claiming through a "more remote ancestor" it would still be necessary to ascertain a common ancestor between the decedent and each group of competing collateral heirs in order to make the determination as to which ancestor was nearer and which was the more remote.

Counting up to the nearest common ancestor and then down to the collateral heir is the way that the civil law method of computation works according to our precedents, regardless of whether the goal is to establish the degree of kinship or the nearness or remoteness of the ancestor. In either case it requires a common ancestor. Thus, as I view it, the use of the word "common" as it appears in § 302(9) carries with it no separate or independent meaning. Rather, in the context in which it appears it is merely surplusage.

It is true that words in a statute should not be construed as surplusage if a reasonable construction which will give them some meaning is possible. *In re Estate of Webb,* Del.Ch., 269 A.2d 413 (1970), aff'd, Del. Supr., 276 A.2d 457 (1971). At the same time, unnecessary words or clauses, or those having no meaning in harmony with the legislative intent as collected from the entire act, will be treated as surplusage. 82 *C.J.S.,* Statutes § 343; 73 *Am.Jur.2d,* Statutes § 200. And compare *Mayor and Council of Wilmington v. State ex rel. DuPont,* Del.Supr., 57 A.2d 70 (1947). Words in a statute which constitute surplusage may be disregarded. *State v. Holland,* Del.Super., 189 A.2d 79 (1963), aff'd, Del.Supr., 194 A.2d 698 (1963).

Here, § 302(9) establishes the definition of "kin" and "kindred" as used throughout our statutory law with regard to the descent of estates. It does so by designating the method to be used to ascertain any given relationship to a decedent for purposes of inheritance. The method so designated—the civil law method—necessarily requires the determination of a common ancestor when collateral heirs are involved. Thus, the use of the word "common" in the

---

Thus, from the reference in § 302(9) to "the civil law," respondents argue that the early framers of the Delaware laws on intestate succession intended that when distribution reached the point of collateral kindred the heirs in both the paternal and maternal lines were to share in the estate, and that the preference given to certain collateral heirs over others was meant to apply only to the share allotted to their line.

However, as petitioners point out, § 302(9) adopts only the civil law "method" of computing the degrees of consanguinity. It does not purport to adopt the civil law system of distri-bution among collateral kindred. There is nothing in our statutes which speaks directly to the prospect of dividing the intestate estate into moieties so as to give an equal one-half to each line. And, finally, our precedents belie any such construction. For instance, in *Barrett v. Sudler, supra,* the estate was shared by both lines on the basis of a ¹⁄₁₃th interest to each heir and in *In re White's Estate, supra,* a one-third interest went to an heir on the paternal side while a two-thirds interest went to heirs on the maternal side. Thus, I find this argument of respondents to be unpersuasive.

latter portion of the statute, giving a preference to collateral kindred claiming through a nearer common ancestor over those claiming through a more remote common ancestor, is unnecessary. The method of computation required by the statute would be the same even if the word had been omitted.

Since I view the use of the word "common" to be surplusage in the context in which it appears, it naturally follows that I cannot ascribe to it a legislative intention to limit the preference given certain collateral heirs by the statute to only those situations in which there are competing collateral heirs of the same degree standing on the same side of the family. On this point I reject the argument of the respondents.

■ Secondly, giving the statute a literal reading according to its language as it appears does not, in my view, violate any historic legislative policy designed to assure that the female line receives equal treatment with the male line in matters of intestate succession. This is because the statute treats collateral heirs claiming through a nearer common ancestor equally, regardless of whether they be collateral heirs on the maternal side or the paternal side.

In this case it is true that to accept the literal language of § 302(9) will mean that the paternal collateral heirs will take the entire estate to the exclusion of the maternal collateral heirs because they are claiming through a common ancestor nearer to the decedent. But this is purely because of the facts of this particular case. If the facts were reversed, and if the maternal heirs were claiming through the nearer ancestor, they would take to the exclusion of the paternal heirs. Thus, in this sense, the statutory preference does not in and of itself create a preference for paternal heirs over maternal heirs.

In summary, I am in agreement with the petitioners that the language of the statute is clear on its face. It gives a preference to collateral kindred. The term "collateral kindred," unmodified as it is in the statute, includes necessarily collateral kindred on both the maternal and paternal sides. Thus, it gives the preference to collateral kindred claiming through a nearer common ancestor between them and the decedent, irrespective of the side of the family that they represent.

■ Where the language of a statute is clear and unambiguous, the statute must be held to mean that which it clearly states. *Balma v. Tidewater Oil Company,* Del. Supr., 214 A.2d 560 (1965); *Kelley v. Mayor and Council of the City of Dover,* Del.Ch., 300 A.2d 31 (1972), aff'd, *Del.Supr.* 327 A.2d 748 (1974). The language is clear and unambiguous here. To adopt the argument of the respondents would be to interpret the preferential language of the statute so as to create two subclasses of collateral kindred—maternal and paternal. There is no language in the statute that would warrant such a construction.

■ The findings and recommendation of the master are upheld. An order will be entered decreeing that the petitioners, Bernhardt C. Smith, Beatrice S. Peters and Nancy S. Longacre, are the collateral heirs of Edward S. Smith who are entitled to the distribution of his intestate estate.