## John S. Murdock et al. v. John Weimer et al.

1. DRAINAGE COMMISSIONERS—*Jurisdiction of County Court to Contest Election.*—Drainage commissioners are officers within the meaning of Par. 100, Ch. 46, S. & C. Statutes, whose election can be contested in the County Court.

2. DRAINAGE DISTRICTS—*Who Are Not Legal Voters.*—In drainage districts where the right of voting upon drainage questions is conferred upon land owners, deeds of conveyance, while colorably giving title, not made, however, for the purpose of changing ownership in the land, but merely for the purpose of giving the grantees the apparent right to vote and with an implied understanding that they should vote as desired by the grantors, do not make the holders of such deeds legal voters.

**Memorandum.**—Contest of election of drainage commissioners. In the County Court of Mason County; the Hon. THOMAS N. MEHAN, Judge, presiding. Heard in this court on appeal at the May term, 1894. Judgment affirmed. Opinion filed October 29, 1894.

I. R. BROWN, attorney for appellants.

JOHN W. PITMAN, attorney for appellees.

MR. PRESIDING JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This was a petition filed in the County Court to contest the election of appellants as drainage commissioners of Hurd's Lake Special Drainage District.

Upon a hearing the court found that the petitioners, Eaton, Speckman and Johnson, were, and that appellants were not, elected such commissioners, from which judgment the present appeal is prosecuted.

The first question presented is whether drainage commissioners are " officers " within the meaning of Par. 100, Ch. 46, S. & C. Stat., whose election can be contested before the County Court. We are inclined to the opinion that the trial court properly answered the question in the affirmative. Mirsh v. Russell, 136 Ill. 22.

The next and most important inquiry is as to the qualification of certain persons who voted at said election and

whose votes were disregarded by the court although they had been counted by the judges of the election. If these votes were legal and properly counted the appellants were elected; if not, the appellees, Eaton, Speckman and Johnson were elected. It is provided by Sec. 54 of the Farm Drainage Act that " every adult owner of land in said district, whether residing within or without said district, shall be a voter, and if a resident of the county in which said district or any part thereof lies, eligible to the office of drainage commissioner." The petition alleged that by the concerted action of J. M. Estep, Abram Estep, John G. Ermeling, Sr., and John B. Stone, for the sole purpose of controlling the election, they made certain conveyances on the day before the election, of portions of their land lying in said district, as follows : said J. M. Estep conveyed five acres of his land jointly to H. B. Samuel, E. F. Leonard, A. F. Crum, C. F. List and Ida L. Estep, his sons-in-law and daughter; said Abram Estep, three acres jointly to Mary A. Teters, Cordelia Garrett and Pleasant N. Estep, three of his children; said John G. Ermeling, Sr., forty acres jointly to George J. Ermeling, Edward C. Ermeling, John G. Ermeling, Jr., Elizabeth V. Ermeling, Jennie Butler and Wm. Butler, his children and son-in-law; and said John B. Stone, twenty acres jointly to James D. Perkins, Frank Baker, David C. Estep, Thomas K. Murdock, Thomas Tibbs, Henry G. Yardley, Barbara Perkins and Carrie Leonard, none of whom were related to him except Frank Baker, who was his son-in-law.

The grantees in these deeds owned no other lands in the district. Of the twenty-two persons so apparently clothed with the power to vote, twenty-one appeared at the polls, presented their deeds, which had been recorded that morning, and were permitted to vote. Forty-three votes were cast, including those of said twenty-one grantees.

It is manifest that the action of the grantors in these deeds, who were less than one-fourth of the land owners and voters of the district, was for the purpose of enabling themselves to control the election and the affairs of the district.

It is unusual for lands to be conveyed or held in the manner here shown. For practical and ordinary uses it is not desirable that such small quantities of such land should be held by so many owners jointly. While some of the land was quite valuable for farming, some of it was of little, if any, value for any purpose.

The deeds were made without the request of the grantees, and, as to most of them, without their knowledge, and there is but little pretense that a consideration was paid or expected in any instance; yet all of the grantees except one appeared as voters and acted in concert with the grantors to secure the election of appellants.

The sum and substance of it all is that there was a conspiracy to elect appellants. The deeds were made for that purpose.

There was no purpose merely to convey lands, but to accomplish the ulterior design of controlling the election; and while there is much testimony by the parties to these deeds, that they acted in good faith, without any corrupt intention and the like, yet there can be no escaping the conclusion that the deeds, while colorably giving title, were not made for the purpose of changing ownership in the land, but merely for the sake of giving the grantees therein the apparent right to vote, and with an implied understanding that they would vote as desired by the grantors.

It can not be believed that the grantors would have made the deeds to these or to other grantees if they had not expected the votes to be cast as they were.

Now, when the statute provides that the owner of land may vote, it intends and means the real and *bona fide* owner. The proceedings here shown were not *bona fide* and genuine in any proper sense. They were merely colorable and for an ulterior purpose, and so, fraudulent in law. The ostensible purpose and the real purpose were different.

The disguise is transparent and there is no difficulty in discovering what was the real design.

Unless it is to be said that every person who is named as a grantee in a deed shall be regarded as an " owner " as that

term is used in Sec. 54, *supra*, it must be conceded the conclusion reached by the trial court on this point is supported by the proof.

Some argument is made that the ballots were not secured and kept in the manner pointed out by the general election law, and therefore, that they could not be counted or considered.

There seems to be no doubt that the persons in question voted the ballots as they appear. There is no reason to suspect that they have been changed since they were cast. Indeed, there is no plausible suggestion of that sort.

The case of Kingery v. Berry, 94 Ill. 515, cited by appellants, is so unlike this case, in its facts and in the reasoning of the opinion, as not to be in point.

No other objections are urged, and the judgment will be affirmed.