A. B. BENNETT ET AL. V. WILLIAM OTTO ET AL.

FILED APRIL 22, 1903. No. 12,874.

1. Proceeding in Error: MOTION FOR NEW TRIAL: LICENSE BOARD. A motion for a new trial is not necessary in order to obtain a review of the judgment of the district court entered on the hearing of an appeal taken from the order of a license board granting or refusing a license to sell intoxicating liquors.

2. Appeal from License Board. On the hearing of such appeal, the district judge should exercise his independent judgment, being governed by the evidence found in the record alone; his judgment should not be controlled or influenced by the finding made by the board from which the appeal is taken.

3. Evidence. Evidence examined, and *held* not to support the finding of the district court.

ERROR to the district court for York county: SAMUEL H. SORNBORGER, DISTRICT JUDGE. *Reversed.*

*F. C. Power,* for plaintiffs in error.

*T. L. Norval, Richard S. Norval* and *B. F. Norval, contra.*

DUFFIE, C.

May 13, 1901, William Otto filed a petition with the clerk of the village of Waco, asking that a license be granted him for the sale of intoxicating liquors in said village for the ensuing year. A remonstrance was filed,

upon which a hearing was had, and the village trustees awarded the applicant a license for the sale of liquors for one year from May, 1901. From the order allowing the license, an appeal was taken to the district court and upon a hearing the order of the board was affirmed. From this order a writ of error has been taken to this court.

The defendants in error first insist that the plaintiffs in error have no standing in this court because no motion for a new trial was filed and passed on by the district court. We do not think that a motion for a new trial is required in actions of this character. Section 4, chapter 50 of the Compiled Statutes (Annotated Statutes, 7153), among other things, provides that "the testimony on said hearing shall be reduced to writing and filed in the office of application, and if any party feels himself aggrieved by the decision in said case he may appeal therefrom to the district court, and said testimony shall be transmitted to said district court and such appeal shall be decided by the judge of such court upon said evidence alone."

Is this hearing in the district court a trial, within the meaning of the law requiring a motion for a new trial?

In *Slobodisky v. Curtis*, 58 Neb. 211, 214, it is said:

"It has been often asserted by this court that a motion for a new trial is essential to a review of alleged errors occurring upon a trial of a cause. By this it is not meant that a motion for a new trial must be made in the court below to entitle a party to review any case by petition in error, although language in some of our opinions is seemingly in conflict with this statement. The motion is indispensable where a review of alleged errors and rulings occurring during the trial is sought, but the rule has not been extended to every order or decision. Thus it has been held that no motion for a new trial is necessary to review an order sustaining a demurrer to a pleading (*Hays v. Mercier*, 22 Neb. 656; *O'Donohue v. Hendrix*, 13 Neb. 255; *Scarborough v. Myrick*, 47 Neb. 794), a decision on a motion to vacate an award (*Graves v. Scoville*, 17 Neb. 593), a ruling on a plea in abatement (*Bohanan v.*

*State,* 15 Neb. 209), a judgment affirming or reversing in
an error proceeding the decision of an inferior court or
tribunal (*Newlove v. Woodward,* 9 Neb. 502; *Leach v.
Sutphen,* 11 Neb. 527)."

The case at bar falls clearly within the ruling of the
case of *Leach v. Sutphen, supra.* A case of forcible entry
and detainer before a justice under the old proceeding was
taken to the district court upon petition in error; the evi-
dence being preserved and the district court determining
the case from the record thus presented. From the de-
cision of the district court the case was brought to this
court by petition in error. In that case it is said (p. 528):

"Objection is also made that no motion for a new trial
was made in the district court. This is unnecessary ex-
cept in cases where questions of fact are tried and de-
termined, and as the judgment of the justice was affirmed,
there was no trial of questions of fact, and no motion was
necessary."

By the express terms of the statute the district court is
required to pass upon the appeal from the evidence cer-
tified to it by the license board alone. Of necessity there
could have been no rulings by the district court either in
admitting or excluding evidence; and a trial, as we under-
stand the word, means an original investigation by the dis-
trict court, and the examination of evidence produced by
the parties, including the ruling of the court, which, if not
satisfactory, must be brought to the attention of the court
by a motion for a new trial. Here there was a mere ex-
amination of the record presented, and a motion for a
new trial could have alleged nothing except that the court
erred in deciding the matter incorrectly upon the record.

Otto prepared his petition and sought to have the same
signed by thirty freeholders of the village of Waco for
some time prior to May 13, when the same was finally filed
with the clerk of the board. It appears that there was
some difficulty in getting the requisite number of free-
holders to his petition. Before the petition was finally
signed by the thirty freeholders, thirty-four persons pur-

chased about three acres of land lying within the corporate limits of the village of Waco—the object being, as the witnesses testified, to obtain title to said tract for the purpose of a base ball and picnic ground; each subscriber pledging himself for one or more shares, at five dollars each, as he felt disposed. A deed was made jointly to the subscribers to the purchase fund, of date May 12, 1901, one day previous to the final completion and filing of the peti: tion. It is now insisted that the purchase of this park was a scheme instituted by the defendants in error for the purpose of qualifying the subscribers for shares to sign Otto's petition, and that their subscription and payment of five dollars each toward the purchase of this land was for the express purpose of making them freeholders; that they were not *bona fide* freeholders within the meaning of the statute and their names should not be counted on the petition.

The statute undoubtedly contemplates that thirty *bona fide* freeholders shall sign a petition for the granting of a license to sell intoxicating liquors, and if thirty of the signers of Otto's petition were not *bona fide* freeholders within the meaning of the statute, then the village trustees had no jurisdiction to entertain his petition and award him a license.

In *Austin v. Atlantic City,* 48 N. J. Law 118, it is said:

"A deed for lands to many persons for a single consideration, and with the purpose of qualifying them to sign recommendations for inn and tavern licenses, is fraudulent, and will not constitute them reputable freeholders within the statute."

And to the same effect is *Smith v. Elizabeth,* 46 N. J. Law 312.

It is evident, then, that the question whether the eight persons to whom objection was made were *bona fide* freeholders, within the meaning of the law, was one of the material questions to be determined in the case. The village trustees found that they were, and granted the license. The district court, however, refused to express his inde-

pendent judgment upon this question, but in an opinion filed, and which we have examined to ascertain the theory upon which he disposed of the case, he expresses the following views in relation to the consideration to be given the evidence and the finding of the license board:

"Objection No. 4, as I have before stated, has given me much concern, and I am free to say that if the court were sitting as a court of original instance in hearing the testimony, I am inclined to believe that the court might and probably would have reached a different conclusion from that reached by the trustees in hearing and determining the question as to whether six of the petitioners named in the remonstrance were such *bona fide* freeholders as to entitle them to participate in petitioning for a license. The policy of the law is to permit only such class of citizens and residents of a village to participate in a final determination of whether there shall be a saloon petitioned for as own the real estate of such village, and to exclude those not visited with that dignity of citizenship known as a freeholder from participating therein. But it makes no distinctions as to degree or duration, prior to the time of making such application, of such ownership or such freeholdership. That all of the petitioners, thirty-four in number, [who] signed said petition were, technically at least, freeholders at the time of signing the petition, there is no question in the record. But it is claimed that they are not *bona fide* freeholders and that the petitioner and others interested with him procured to be conveyed to them certain real estate for the express purpose, and only purpose, of making them eligible as petitioners for a license. And to the mind of the court it is a very suspicious circumstance at least that this is possibly true, since the real estate was conveyed to them not longer than a day before the time when they must have signed the petition. That, together with the smallness of the holding, constitutes the particular reason urged as the facts upon which is grounded the declaration of the remonstrance that they were by the connivance of the petitioner made to appear

as such freholders only for the purpose of being eligible to petition for a license. But this question must necessarily have been flatly and squarely before the village trustees as one of the facts for their determination, and they were in a situation, it seems to the court, much better able to judge of the value of the testimony bearing upon this point than this court; at all events it is one of the recognized rules of appellate jurisdiction that where upon a controverted question of fact there is evidence supporting the finding of the tribunal from which appeal is taken, such finding will not be disturbed by the appellate court, simply because the evidence does not, in the judgment of the appellate court, appear to preponderate in support of the conclusion reached by the lower court or tribunal; and applying this rule to the question in controversy, the court feels bound to hold that, there being evidence to sustain the *bona fides* of the transaction before the board of trustees, such finding should not be set aside or reversed."

This court has authority to review the judgment of the district court only; it has no authority to review the reasons given for the judgment; and, while this is so, we think that we should not dismiss this matter without expressing our opinion of the rule which should govern the district courts of the state on the trial of such appeals in the future.

The statute makes it the duty of the district court to determine the appeal from the evidence alone. The effect of this statute is not alone to prohibit the introduction of additional evidence upon the appeal, but is to require the district court to pass upon questions of law and fact presented by the record, and give an independent judgment thereon. If, as intimated by the district judge in his opinion, he should be governed by the rule that where there is any material evidence to sustain the finding it will not be disturbed, then an appeal from the finding of the village board would be a useless proceeding, because the cases are rare indeed where some evidence would not be found to support the finding of the license board. The

46

appellant in such proceeding is entitled to the judgment
of the district judge uninfluenced by the finding of the
license board, and he is to pronounce judgment from what
is disclosed by the record before him; being governed solely
by what he finds therein. The undoubted intent of the
legislature was that the evidence certified in the record
should of itself be sufficient to warrant the granting of a
license.

The reasons calling upon this court to sustain the find-
ings of a jury where there is evidence to sustain the verdict
do not exist in favor of the findings of a license board. The
evidence going to the jury and on which its finding is based
is carefully guarded by the judge presiding at the trial,
who is watchful to exclude all hearsay, incompetent and
immaterial evidence and to guard the rights of the parties
by the strict rules of law governing the trial of a case, and
to see that nothing which may improperly influence the
verdict is allowed either in the hearing or in the argument
of counsel. Not only is this so, but in the consideration of
the case the jury are aided and advised by carefully pre-
pared instructions covering the questions in issue, and
their duty is applying the evidence that has been sub-
mitted to their consideration; and after the opinion of
the jury has been taken, the court, on a motion for a new
trial, adds the seal of his approval to the findings of the
jury by entering judgment on the verdict. The trial of a
case in a court of record is so carefully guarded that the
judgment, when finally entered, comes to this court with
the very strongest presumption in its favor, and, under
the circumstances, it should not be set aside unless evi-
dence for its support is so wanting as to make it evident
that an injustice has been done. These reasons do not
exist in favor of the finding of the license board, and
such finding should not, therefore, control or influence the
action of the district judge in passing upon an appeal from
an order granting or refusing a license. The legislature
evidently took all these matters into consideration when
it framed the statute.

Coming now to the evidence in the case, we incline to the opinion that at least six of the petitioners were not *bona fide* freeholders. The circumstances under which the deed to the park was made, the fact that so many of the grantees are young men with no property or other interests in the town of Waco to be benefited by the purchase of this ground for park purposes, and the fact that they pretend that a five dollar interest in this land was taken as an "investment," are all inconsistent with the *bona fides* of the transaction. We can understand why property owners, permanent residents of Waco, would contribute something toward a park for the town, and why the young men of the village should desire a ball ground to which they might resort for ball play and other sports, and that this might induce them to contribute or donate from their means toward the purchase of such grounds; but when they assert that such investment of their money was for profit and that that was the inducement which led them to put five dollars in such an enterprise, we are led to look for some other motive for their action; and the signing of Otto's petition the same evening that the deed was made, or at latest the next day, indicates quite conclusively that a desire to qualify themselves as such signers was the principal inducing cause.

We recommend a reversal of the judgment of the district court, and that the case be remanded with directions to that court to enter judgment reversing the order of the license board and revoking the license granted to Otto.

ALBERT, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the case remanded with directions to that court to enter judgment reversing the order of the license board and revoking the license granted to Otto.

REVERSED AND REMANDED.