GRANT DYE, APPELLEE, V. WESLEY RASER ET AL., APPELLANTS.

FILED MAY 24, 1907.   No. 14,769.

1. Liquor License: APPLICATION. Under the liquor laws of this state (Ann. St. ch. 32), a petition for a liquor license must be signed by *bona fide* freeholders.

2. ——: ——: FREEHOLDER. One made a freeholder for the sole purpose of qualifying him as a petitioner for a liquor license is not a *bona fide* freeholder within the meaning of the liquor law.

3. ——: ——: ——. Lapse of time alone will not qualify a bad faith freeholder to sign a petition for a liquor license.

APPEAL from the district court for Merrick county: CONRAD HOLLENBECK, JUDGE. *Reversed.*

*Martin & Ayres* and *Thomas Darnall,* for appellants.

*Patterson & Patterson, contra.*

EPPERSON, C.

In May, 1906, upon the petition of 33 citizens, the trustees of the village of Chapman issued a liquor license to appellee, overruling the remonstrance of appellants. The district court affirmed the action of the village board, and remonstrators appeal to this court. .

Twelve of the petitioners claim to be freeholders by reason of each owning a certain lot or part of a lot in McCormick's addition to said village. McCormick's addition consists of one block of land divided into 12 lots, 25x140 feet. It is 40 rods from the original town. The intervening land is not platted. There are no improvements upon these lots. They are low and flat, and have been put to no use whatever by the owners. The tract was platted in 1902, since which time the owners of the different lots have been persistent petitioners for liquor licenses. Petitioner Hartman holds a deed to an undivided one-half interest in one of the lots, for which he gave $10 March 2, 1906. He says he bought it for speculation and for a garden. He did not know the condition of the lot, nor could he explain how it appeared of value for speculation. Petitioner Trimann bought an entire lot for $10 March 24, 1906, and says that he made the pur-chase as an investment. D. W. Abbott, who signed the petition, claimed to own one-half of a lot purchased in December, 1905. Another petitioner, Platt Abbott, claimed to own all of this lot under a deed given in April, 1904. Both deeds were executed by the same grantor. The evidence does not show that D. W. Abbott is the owner. Each of the above named, except Platt Abbott, signed the petition here in controversy soon after obtaining their deeds. Petitioners Gallogly, Worlard, Hanna, Platt Abbott, Westphal, Valkman, Mrs. Valkman, Crandall and Flora Abbott each acquired title to one of the McCor-

mick lots, or an interest in one, prior to the spring of 1906, but each conveyance was at a time when a petition for a liquor license was in circulation. The purchase prices varied from $8 to $25. Many of the grantees did not know the dimensions of their lots. Several testified that they bought their property for speculation or for a garden spot, but none was ever used for gardening. The lots in McCormick's addition were not desirable property, and the only inference deducible from the evidence is that the petitioners above named bought and held their several tracts of land for the sole purpose of becoming eligible to petition for liquor licenses. Under these circumstances are they *bona fide* freeholders within the meaning of the liquor law?

The statute contemplates that 30 *bona fide* resident freeholders shall sign the petition; and it has been said that "a deed for lands to many persons for a single consideration, and with the purpose of qualifying them to sign recommendations for inn and tavern licenses, is fraudulent, and will not constitute them reputable freeholders within the statute." *Austin v. Atlantic City*, 48 N. J. Law, 118; *Smith v. Elizabeth*, 46 N. J. Law, 312; *Bennett v. Otto*, 68 Neb. 652; *Colglazier v. McClary & Martin*, 5 Neb. (Unof.) 332. In *Bennett v. Otto, supra,* the petitioners, whose qualifications were in dispute, with 28 others, purchased a tract of three acres to be used as a park, taking title by deed, in which all were named as grantees. Each paid $5, claiming that the land was taken as an investment. Remonstrators contended that they were not *bona fide* freeholders, and this court so held, saying: "The circumstances under which the deed to the park was made, the fact that so many of the grantees are young men with no property or other interests in the town of Waco to be benefited by the purchase of this ground for park purposes, and the fact that they pretend that a five dollar interest in this land was taken as an 'investment,' are all inconsistent with the *bona fides* of the transaction. We can understand why property owners, permanent resi-

dents of Waco, would contribute something toward a park for the town, and why the young men of the village should desire a ball ground to which they might resort for ball play and other sports, and that this might induce them to contribute or donate from their means toward the purchase of such grounds; but when they assert that such investment of their money was for profit, and that that was the inducement which led them to put five dollars in such an enterprise, we are led to look for some other cause for their action; and the signing of Otto's petition the same evening that the deed was made, or at latest the next day, indicates quite conclusively that a desire to qualify themselves as such signers was the principal inducing cause." In *Colglazier v. McClary*, 5 Neb. (Unof.) 332, it appears that several freeholders signed the petition soon after obtaining deeds. Many of them obtained title from the same grantor, acting through his attorney in fact, who had circulated the petition in behalf of another. In some instances a small cash payment was made by the purchaser and notes given for the remainder. The conveyances had not been placed on record. It was held that they were made freeholders for the purpose of enabling them to sign the petition.

Appellee attempts to distinguish *Bennett v. Otto* and *Colglazier v. McClary, supra,* on the ground that the applicants therein had assisted in making the petitioners freeholders. The conclusion of this court was not based on any direct evidence of that nature, but the unusual manner of becoming freeholders, as shown by the evidence in each case, was sufficient to disclose that the petitioners were not *bona fide* freeholders. The facts are different, but no stronger in establishing that conclusion in the cases cited than in the case at bar. There is no difference in principle between the bad faith of the conveyances condemned by this court in *Bennett v. Otto* and *Colglazier v. McClary* and the bad faith in the conveyance of the small worthless tracts of land in the case at bar. In the case in hand it is true that many of the conveyances were made to assist

former applicants to obtain licenses, and the title now relied on to qualify some of the petitioners had been held for some time. As above shown, however, these titles were not *bona fide* when acquired. They never became such by lapse of time. The evidence is sufficient not only to justify, but to require, the conclusion that McCormick's addition is held in the interests of the liquor traffic, not as a place for conducting business, but for the purpose of annually furnishing freeholders, so claimed, to sign petitions for liquor licenses. We cannot place judicial approval upon this method of obtaining a liquor license. The 12 signers above named were not *bona fide* freeholders within the meaning of the liquor laws, Ann. St., ch. 32.

The judgment of the district court was wrong and should be reversed, and we so recommend.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the license canceled.

REVERSED.