414 P.2d 522

Jose E. GOMEZ and Preciliano C. Garcia,
Plaintiffs-Appellants,

v.

BOARD OF EDUCATION OF DULCE IN-
DEPENDENT SCHOOL DISTRICT
NO. 21, Defendant-Appellee.

No. 7979.

Supreme Court of New Mexico.

May 16, 1966.

Bigbee and Byrd, G. Stanley Crout, Santa Fe, for appellants.

Standley, Kegel & Campos, Santa Fe, for appellee.

CHAVEZ, Justice.

On March 12, 1965, a referendum was conducted in Dulce School District No. 21, Rio Arriba County, New Mexico, for the purpose of voting upon the issuance of bonds of said district in the amount of $509,000. The issuance was approved by a vote of 72 in favor of the bond issue and 55 against its issuance.

Plaintiffs asked that the trial court declare the bond issue to be void, and sought an injunction against defendant's issuance of the bonds. The trial court granted summary judgment for defendant and dismissed the cause. Plaintiffs have appealed.

Plaintiffs contest the qualifications of 31 voters who voted in the Dulce precinct where the issuance was approved by a vote of 46 to 8. Plaintiffs attached affidavits accounting for 6 of the 8 votes against issuance, indicating that at least 29 of the 31 challenged voters cast their ballots in favor of its issuance. If these 31 voters are declared unqualified, and 29 votes deducted from the total favoring issuance, the proposed bond issue is defeated.

Plaintiffs contend that the 31 voters were unqualified, due to the fact that they did not meet the intent of Art. IX, § 11, N.M. Const., which provides in part:

"No school district shall borrow money, except for the purpose of erecting and furnishing school buildings or purchasing school grounds, and in such cases only when the proposition to create the debt shall have been submitted to a vote of such qualified electors of the district *as are owners of real estate* within such school district, * * *." (Emphasis added.)

The 31 challenged voters qualified to vote on the basis of 25 quitclaim deeds executed by a Mary Lynch four days before the election. The deeds were for 20 x 50-foot tracts taken from an area of about .6 of an acre. The parties stipulated that Mary Lynch, who executed the quitclaim deeds, knew that the election would be held on March 12, 1965; and that she knew that none of the grantees owned real estate within said school district prior to the execution of the quitclaim deeds. It was also admitted, for the purpose of the hearing on the motion for summary judgment, that the deeds were given for the purpose of qualifying the grantees to vote in the school bond referendum. By affidavit, Mary ·Lynch stated that no consideration was paid for the tracts.

There is a definite correlation between the order in which the grantees voted and the order in which the tracts were taken

from the total deeded area. Although there is a strong relationship to the voting at the referendum, affidavits executed by Mary Lynch and the grantees state that there was no voting obligation attached to the grants.

■ Defendant seeks support in an affidavit executed by a Samuel L. Hilliard, which indicates that the tracts were assessed at a valuation higher than the average for landowners in the district. The overwhelming weight of authority is that assessed value is not competent direct evidence of value for purposes other than taxation. See, 39 A.L.R.2d 214.

■ Plaintiffs submitted three affidavits at the hearing on the summary judgment. Defendant did not object thereto at the hearing and cannot now complain about their admission. Bishop v. Mace, 25 N.M. 411, 184 P. 215. The first affidavit stated that affiant believed that the tracts were unlikely to be used for any purpose other than to qualify grantees to vote; the second indicated that affiant was told his "papers" were ready and that he could go vote; and the third described the presentation of a "piece of paper" and a solicitation to vote "for the benefit of his children."

We are, therefore, faced with the question of whether, as a matter of law supporting a summary judgment, the transfer of small tracts of land for the purpose of qualifying the grantees to vote, under the "owners of real estate" provision of Art. IX, § 11, supra, is in compliance with the intent of that provision. No cases have been cited, and we have found none, interpreting such a constitutional provision, but other court decisions under statutes with similar provisions prove helpful in our analysis.

In McGraw v. Court of County Com'rs, 89 Ala. 407, 8 So. 852, it was held that defendants correctly refused to count the votes of "persons to whom an inconsiderable fraction of land had been conveyed, solely for the purpose of enabling them to vote" as freeholders entitled to vote on a proposal to prohibit stock from running at large. The court stated:

"* * * The sense of the law is that only resident freeholders in fact, not in name, shall have a voice in determining the issue, as is clearly manifest in every aspect of the statute, express or implied. * * *"

We believe the same is true of our constitutional provision.

In People ex rel. Saunier v. Stratton, 33 Colo. 464, 81 P. 245, petitions for incorporation of towns had to be signed by 30 electors who were landowners. In considering some of the signers of a petition, the court said:

"* * * Those of the petitioners who accepted deeds of lots from those interested in the incorporation as a reward for signing the petition were not bona fide landowners within the meaning of

the statute, and were not entitled to sign the petition. * * *"

In Murdock v. Weimer, 55 Ill.App. 527, voting on drainage questions was limited to landowners. The court held that, where there was no purpose to convey lands but to accomplish the ulterior design of controlling the election through conveyances, the grantees were not bona fide landowners and were not eligible to vote. We think the same implied requirement of good-faith ownership is implied in the applicable provision of our constitution.

In Jones v. Carver, 29 Tex.Civ.App. 268, 67 S.W. 780, an election was held to determine if certain animals should be allowed to run at large. The court said:

"'* * * the deeds were made for the sole purpose of defeating the election by making the seven persons technically 'freeholders,' * * *. This clearly shows a fraudulent attempt to defeat the wishes of a majority of the bona fide freeholders of the district, and is contrary to the spirit, if not the letter, of the law

* * *."

It appears that the attempt to qualify voters in the instant case is contrary to the spirit of our constitution.

In Nebraska, statutes required that petitions for permission to sell liquor had to be signed by freeholders. The supreme court of that state uniformly struck down a variety of attempts to qualify signers of such petitions. Bennett v. Otto, 68 Neb. 652, 94 N.W. 807; Colglazier v. McClary & Martin, 5 Neb.Unoff. 332, 98 N.W. 670; Dye v. Raser, 79 Neb. 149, 112 N.W. 332; Powell v. Morrill, 83 Neb. 119, 119 N.W. 9; Marica v. Yost, 85 Neb. 842, 124 N.W. 460. The reasoning behind these decisions is best stated in Colglazier v. McClary & Martin, supra, wherein the court held:

"* * * it cannot be open to rational question that by the word 'freeholder' is meant one who is bona fide such, and not one who is vested with title to realty in order that he may become technically qualified to sign the petition for license.

* * * To tolerate such procedure— to hold that such signatures were sufficient—would be to subordinate the spirit of the law to the letter, and give to the statute a construction that would encourage a traffic which its manifest purpose was to repress. * * *"

For us to find, that the voters in the Dulce school bond referendum were qualified, would likewise permit a result which our constitutional provision is clearly designed to prohibit.

Defendant cites Pettit v. Yewell, 113 Ky. 777, 68 S.W. 1075, where a man purchased real estate for the purpose of qualifying as a candidate for public office and the court permitted such action. See also, State ex

rel. Peterson v. City of Fraser, 191 Minn. 427, 254 N.W. 776, in which the court held:

"* * * But we have here something which is at bottom a very different matter. The subject of inquiry is not the qualification for those * * * authorized by law to institute the proceeding, but rather and only the qualifications for the holding of a public office, * * *. Unlike liquor license laws, the policy now determinative is not restrictive or repressive but permissive and enlarging. * * *"

This distinction, we think, is a fair one. There are two reasons for the real estate ownership provision in our constitution: (1) To insure that the persons voting are relatively permanent members of the community whose schools would be affected; and (2) to allow those upon whom the tax burden would fall to make the decision which would raise taxes.

Defendant cites Board of Education of Gallup Municipal School Dist. v. Robinson, 57 N.M. 445, 259 P.2d 1028, as saying that we should not enlarge the scope of the constitution to correct situations which the court feels should be remedied. But that opinion also qualified the statement by saying that we should not enlarge the scope beyond the intent of the constitution. We believe that our conclusions here do not enlarge the scope beyond the intent of the constitution, and that they are in line with State ex rel. Ward v. Romero, 17 N.M. 88, 125 P. 617, where we said:

"* * * It is the duty of this court to interpret the various provisions of the Constitution to carry out the spirit of that instrument. We should not permit legal technicalities and subtle niceties to control and thereby destroy what the framers of the Constitution intended.

"Where the spirit and intent of the instrument can be clearly ascertained, effect should be given to it, and the strict letter should not control if the letter leads to incongruous results clearly not intended."

The spirit and intent of the framers of our constitutional provision is clear, and to apply the strict letter of the law in the instant case would lead to the incongruous result of rendering meaningless the land ownership provision of Art. IX, § 11, supra. In order to qualify to vote in a school bond referendum, a person must be a bona fide owner of real estate within such school district.

In view of what we have said, the cause is reversed and remanded to the district court, with direction that, if no facts were overlooked at the summary hearing, the summary judgment in favor of defendant be set aside and a summary judgment in favor of plaintiffs be entered. It is so ordered.

NOBLE and COMPTON, JJ., concur.