**H. Paul KELLEY et al., Plaintiffs,**

v.

**The MAYOR AND COUNCIL OF the CITY OF DOVER et al., Defendants.**

Court of Chancery of Delaware, Kent.

Dec. 13, 1972.

---

Roy S. Shiels, Brown, Shiels & Barros, Dover, for plaintiffs.

Nicholas H. Rodriguez, Schmittinger & Rodriguez, Dover, for defendants.

DUFFY, Chancellor:

Plaintiffs, land owners within an area sought to be annexed by the City of Dover, seek an injunction and an order voiding the special election for annexation held by the City on September 28, 1972. A preliminary injunction was issued on October 9, 1972 and thereafter the parties stipulated to the questions to be decided. This is the decision on plaintiffs' motion for summary judgment.

Plaintiffs attack the election on three grounds: (a) procedural irregularities sufficiently serious to require invalidation; (b) the votes cast by Frank A. Robino, Jr. (enough to control outcome of the election) were improperly recognized and counted by the City; and (c) the weighted (cumulative) voting method used violated the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

### A.

The general rule concerning election procedures is that minor irregularities in the conduct of an election, unaccompanied by fraud or unfair dealing and not affecting the result, will not void an election otherwise valid. Brennan v. Black, Del. Supr., 34 Del.Ch. 380, 104 A.2d 777 (1954).

Plaintiffs say that the election procedures were irregular in two respects; first, the use of paper ballots violated 15 Del.C. § 5004 which requires that voting machines be used in elections in this State and, second, the appointment of election officials violated the City Charter both as to qualifications and number of officials. Each contention implicitly raises two issues: were the procedures used improper and, if so, were the irregularities serious enough

to require invalidation of the election under *Brennan?*

(1)

Plaintiffs argue that voting machines, rather than paper ballots, should have been used in the election. The issue arises because the City Charter and 22 Del.C. § 101 apparently conflict with 15 Del.C. § 5004.[1] The Charter and 22 Del.C. § 101 require weighted voting, based upon assessed property value, and the election procedure called for in the Charter dictates the use of paper ballots. 15 Del.C. § 5004, a later

15 Del.C. § 5004 provides:

"Voting machines shall be used throughout the State in all primary, general and special elections, and in all municipal elections in all incorporated cities and towns of this State. In the event no contest exists in municipal elections voting machines shall not be required. Voting machines may be used in elections held under the provisions of Title 14. The incorporated cities or towns as provided above, shall be authorized and empowered to utilize the voting machines in the custody of the Department of Elections of the county in which they are located upon the payment by said cities, towns or school districts of all costs and expenses incidental to their use."

Section 1A of the City Charter reads in part:

". . . The City of Dover is hereby authorized . . . to extend its boundaries as hereinafter provided.

In order to extend the boundaries . . . the Council shall adopt a resolution proposing the inclusion of territory . . . within the limits of The City . . . and calling for a special election to be held in said territory . . . in accordance with Title 22, Chapter 1, Section 101, Delaware Code for 1953 . . . .

. . . . . .

. . . Every person who is duly registered . . . for said Election District . . . who is a resident of the territory proposed to be included within the limits of The City . . . and who does not own real estate within said territory shall be entitled to one vote at the election to determine whether said territory shall be annexed, and every person of the age of twenty-one years or upwards who is the owner of real estate within a territory proposed to be included assessed to him on the assessment records of Kent County, shall be entitled to one vote for each One Hundred Dollars ($100.00) or fractional part thereof of the assessed value of said real estate . . . .

The Council of The City of Dover shall provide the ballots for any such election and shall bear the cost of holding such election. The ballots shall briefly indicate the territory proposed to be included and shall provide two boxes on the ballot beside which shall appear the words *'For* inclusion within The City of Dover', and *'Against* inclusion within The City of Dover'. Each voter shall indicate his preference by making a mark in pencil within the box beside the words expressing his preference. The election officers shall note on the outside of each ballot before the same is deposited in the ballot box the number of votes to which the person casting such ballot is entitled." 52 Laws of Del., Ch. 136.

22 Del.C. § 101 reads in part:

"The General Assembly shall not enact any law extending the limits of any city or incorporated town in this State so as to include any portion of the adjoining or adjacent territory until after the question of such inclusion shall have first been submitted at a special election to the qualified voters and real estate owners of the territory proposed to be annexed and included in the limits of the city or incorporated town. At such election, if the majority of the qualified voters and real estate owners in such territory shall vote approval to be included within the limits of the city or incorporated town, then and only then shall such territory be included within the limits of the city or incorporated town. Such special election shall be held by the proper election officers of the district or districts embracing the territory. Each real estate owner shall be entitled to one vote for each $100 of real estate assessed to him on the assessment records of the county in which the territory is embraced. Each qualified voter, not being the owner of real estate within the territory, shall be entitled to one vote. However, any city or town may extend its corporate limits without an election by ordinance duly passed by the city or towns [sic] governing body if the lands to be annexed are owned wholly by the city or town which is extending its limits."

enactment of the General Assembly, directs that voting machines be used "throughout this State in all primary, general and special elections, and in all municipal elections in all incorporated cities and towns of this State."

Plaintiffs contend that State ex rel. Stabler v. Whittington, Del.Super., 290 A.2d 659 (1972) settled the construction of 15 Del.C. § 5004 and required the use of voting machines in this special election. However, that case dealt with the failure of town officials to use voting machines in an election for town officers. The unusual situation here, with a potentially conflicting statute which requires weighted voting, was not before the Superior Court. The case is therefore not controlling.

■ If 15 Del.C. § 5004 requires the use of voting machines in a special election of this sort, then the result must be either that the weighted voting requirements of the City Charter and 22 Del.C. § 101 have been repealed by implication or a landowner-voter is required to enter and leave the voting booth (in order to operate the single lever tallying his vote) as many times as he has weighted votes. The absurdity of the latter is apparent: in the present case, Mr. Robino cast 13,912 votes and the law certainly does not contemplate the merry-to-round or slot-machine operation necessary to singly vote that many times; in short, a statute will not be construed so as to require an absurd or unworkable result. E. I. DuPont de Nemours & Co. v. Clark, Del.Supr., 32 Del.Ch. 527, 88 A.2d 436 (1952). The question, therefore, resolves itself to this: does 15 Del.C. § 5004 repeal by implication the weighted voting procedures provided in 22 Del.C. § 101 and the Dover Charter?

■ It is established law in this State that legislation is, whenever possible, presumed to be consistent with pre-existing law. Repeals by implication are never favored. Unless expressly so provided, one act does not ordinarily repeal another if both can be construed together. DuPont v. DuPont, Del.Supr., 7 Terry 592, 87 A.2d 394 (1952). As to this, 22 Del.C. § 101 is nowhere expressly repealed in Title 15, and although voting machines have a salutary effect upon the conduct of elections, the prophylaxis they provide for election mechanics has nothing to do with the public policy of according to property owners a voting weight proportionate to their economic interest in an annexation proceeding. That policy is one of such importance that it would be unreasonable to suppose that the General Assembly intended to change it by so indirect a method as an implied repeal.

■ I therefore find that neither the Charter provisions nor 22 Del.C. § 101 were repealed by the enactment of 15 Del. C. § 5004. And I regard any conflict between the statutes as one of appearance only. Although I need not, and do not, go so far as to adopt the City's suggestion that § 5004 applies only to elections of persons to public office, I agree that the General Assembly did not intend to require the use of voting machines under the particular circumstances of this sort of special election, where it has provided in detail for a procedure which would be rendered impossible by a literal application of § 5004. The common sense conclusion is that the General Assembly simply intended that 22 Del.C. § 101 and the Charter provisions should continue in force as exceptions to the otherwise broad sweep of 15 Del.C. § 5004.

The use of paper ballots in the election was therefore not improper.

(2)

Plaintiffs also argue that the election must be invalidated because the City did not follow the provision of § 1A of the Dover Charter, which reads:

"Any such election shall be held by the election officers of the Election District or Districts of Kent County which shall include the territory proposed to be annexed."

■■ It is agreed that the reference to "election officers of the Election District or Districts" means those officers which 15 Del.C. § 4701 requires each County's Department of Elections to appoint for each election district in the County.[2]

Plaintiff says that the Charter requires that the City use all of the appointed election officials for each district, and only those officials. That procedure was not followed. The land proposed to be annexed lay within two election districts. If plaintiffs are correct, the City should have used six election officials appointed under 15 Del.C. § 4701: three from one district, and three from the other. In fact, the City used but two election officials, only one of whom (Elizabeth Bradford) was an election official of either of the two districts involved. The other official used by the City (Phylis Saxton) was not an election official of either of the two districts involved (although she is a duly appointed official of a third election district not involved in the annexation).

Where the language of a statute is clear and unambiguous, the statute must be held to mean that which it plainly states and there is no room for construction. Balma v. Tidewater Oil Company, Del.Supr., 214 A.2d 560 (1965). The language of this Charter is not ambiguous. It says that the elections shall be held by the election "officers," plural in number. The "election officers" are the three officers appointed by the Kent County Department of Elections. No matter how inconvenient for the City, the Charter plainly means that all of the election officers of each district involved should be used. Nor is there any ambiguity which permits an interpretation allowing the appointment of election officers of districts not involved. The City therefore violated the Charter when it failed to use all of the election officers of both districts involved, and when it used as an election officer an official of a third district.

However, that conclusion does not dispose of the matter. The question remains, were either of these two irregularities alone or cumulatively such that the election must be invalidated? That depends first upon whether the Charter provision is mandatory, i.e., jurisdictional, or merely directory.

■ After an election has been held—in the absence of strong proof of fraud, illegal voting or bad faith—statutory regulations are generally held to be directory unless a departure from the statute casts uncertainty upon the result of the election. State ex rel. Stabler v. Whittington, supra; Antieau, Municipal Corporation Law, § 17.13. There is no showing here of bad faith or fraud, nor is it contended that any illegal voting occurred as a result of these regularities. It is therefore appropriate to hold the Charter's provisions to be directory only and I so conclude.

Plaintiffs argue that Hampson v. State, Del.Supr., 233 A.2d 155 (1955) requires that the results of the election be set aside because one of the election officials was without lawful authority to conduct the election. The Supreme Court held in *Hampson* that:

". . . The election clearly was conducted by individuals having no lawful authority to do so. It is immaterial that the election might have been conducted honestly. If those persons conducting it had no lawful right to do so, it is a nullity, and its results must be set aside."

■ But *Hampson* dealt with a case where the individuals purporting to con-

---

**2.** 15 Del.C. § 4701(a) provides in part:
"During the month of April in each general election year, each department of elections shall appoint for each election district in its county an inspector of elections, who shall be the same person appointed registrar under § 1501 of this title, and 2 judges of election, 1 from each of the 2 principal political parties, who shall be the same persons appointed assistant registrars."

duct the election acted entirely without color of authority. The law distinguishes between cases where the individuals conducting the election are without any lawful authority, and those where the individuals are acting under color of constituted authority. "When members of an election board do not qualify as de jure officers but come into office under color of authority and are so held out to the public that persons having the occasion to deal with the board will recognize them as the official body assigned to handle the affairs of the election, such election board will be a de facto board." 25 Am.Jur.2d, Elections, § 46. That is the case here, and it distinguishes this from *Hampson*.

█ The failure to have present at the election the full number of election officers required by law is also not reason enough to invalidate the election, if it has otherwise been honestly and properly conducted. State ex rel. School District No. 56 v. Schmiesing, 243 Minn. 11, 66 N.W. 2d 20 (1954); Antieau, Municipal Corporation Law, § 17.13; 25 Am.Jur.2d, Elections, § 46.

█ Because the Charter provisions are directory, and there is no showing that the two irregularities in the appointment of election officials had any effect upon the results of the election, the election cannot be set aside on those grounds. However, it is proper to point out that the City, munic-ipalities and other local governments with similar charter provisions are now on notice as to the meaning of those provisions and what they require. Compare State ex rel. Stabler v. Whittington, supra.

**B.**

. I turn now to plaintiffs' contention that the 13,912 votes cast by Frank A. Robino, Jr., should not have been recognized and counted by the City. The votes cast by Robino clearly affected the outcome of the election; had they not been counted, ballots against annexation would have outnumbered those in favor by 2,155 votes.

The votes which Robino cast were based on the assessed value of property at the time of the special election. This property was transferred to him by a corporation, Dover Country Club Apartments, Inc., without consideration on September 27, 1972, the day before the election.

Plaintiffs attack the votes on the ground that the real estate transfer tax required by Title 30, Del.C. was not paid and that failure to pay the tax is an irregularity serious enough to invalidate the votes.[3] However, that is not the dispositive issue.

The parties concede that the City Charter permits only natural persons to vote, a concession compelled by the plain language of the Charter.[4] The corporation itself was prohibited from voting.

---

3. 30 Del.C. § 5402(a) provides:

"Every person who makes, executes, delivers, accepts or presents for recording any document, or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect to the transaction or any part thereof, a realty transfer tax at the rate of 1 percent of the value of the property represented by such document, which tax shall be payable at the time of making, execution, delivery, acceptance or presenting of such document for recording."

30 Del.C. § 5410 provides in part:

"(a) It shall be unlawful for any person to:

(1) make, execute, deliver, accept or present for recording or cause to be made, executed, delivered, accepted or presented for recording, any document, without the full amount of tax thereon being duly paid; . . .

. . . . .

(b) Whoever violates any of the provisions of this section shall be fined not more than $500 and imprisoned for not more than 1 year or both. :

4. Section 1A of the Charter of the City of Dover provides that "only the votes of *qualified voters* and *real estate owners* of a territory as herein described shall be counted in the election to determine whether the territory shall be annexed."

The key issue is therefore whether the corporation may avoid this prohibition by transferring its property to a natural person solely for the purpose of qualifying that person to vote.

■ Equity will not permit one to evade the law by dressing what is prohibited in substance in the form of that which is permissible. This general proposition is expressed in the specific rule that votes cast by one to whom a transfer of property is made solely for the purpose of affecting the results of an election or of qualifying the transferee to vote are invalid. Gomez v. Board of Education of Dulce Independent School District, 76 N.M. 305, 414 P.2d 522 (1966), and cases cited therein.

It is undisputed that the conveyance here was made for the express purpose of allowing Mr. Robino to cast the votes. (In fact, the City argues that the transfer was exempt from taxation because it was made "to a nominee for the sole and limited purpose of voting at the annexation referendum.")

■ The property transfer to Robino, admittedly made to permit him to cast the votes representing its value, therefore had the effect of qualifying votes not otherwise

eligible and was plainly made to influence the election. Under such circumstances, the City should not have recognized the transfer for election purposes and should not have counted Robino's votes. The election must on that ground be invalidated.

### C.

The City suggests that the Charter is unconstitutional insofar as it prohibits corporations from voting, but it offers no specific grounds nor legal argument to support this.

■ A corporation is not, of course, a citizen for every purpose and statutory and constitutional provisions must be construed to determine whether their benefits were intended to be conferred on corporations. See 18 Am.Jur.2d, Corporations, §§ 20–23. It appears that in enacting the Charter of the City of Dover the General Assembly did not intend to confer upon corporations the power to vote in annexation proceedings, but I decline to decide the constitutional issues on the basis of the present record and briefs. In this state of affairs the Charter is presumed constitutional and, on that basis, I find that it

[Emphasis supplied.] Whether the corporation could have voted in this election depends therefore upon whether a corporation may be either a "qualified voter" or a "real estate owner" for the purposes of such an election.

The Charter describes "qualified voters" as: "Every person who is duly registered upon the Books of Registered Voters for said Election District, or Districts . . . " 15 Del.C. § 1701 sets out the qualifications for registration as a qualified voter:

"Every applicant for registration shall be held and considered to be a qualified voter *if he be a citizen of this State of the age of eighteen years and upwards*, or who will be the age of eighteen years on or before the day of the general election next succeeding his registration, and is a *bona fide* resident of this State. . . ." [Emphasis supplied.]

It is obvious that only a natural person may be "of the age of 18 years" and thus

qualify for registration under 15 Del.C. § 1701, and therefore as a "qualified voter" under the Charter.

Similarly, the Charter describes "real estate owners" as follows:

" . . . Every person *of the age of twenty-one years* or upwards who is the owner of real estate within a territory proposed to be included assessed to him on the assessment records of Kent County, shall be entitled to one vote for each One Hundred Dollars ($100.00) or fractional part thereof of the assessed value of said real estate." [Emphasis added.]

Only a natural person can meet the age requirement and therefore qualify as a "real estate owner" for purposes of an annexation election.

It is also significant that although the Charter describes how owners of joint estates shall vote, no provision is made for voting by corporate owners.

properly prohibits corporations from voting.

\*    \*    \*    \*    \*    \*

In view of the foregoing it is not necessary for the Court to consider plaintiffs' other constitutional arguments.